# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
April 13, 2000 Session

## BARBARA VARGO v. LINCOLN BRASS WORKS, INC.

### Appeal from the Circuit Court for Davidson County
No. 99C-374     Carol Soloman, Judge

---

### No. M1999-00734-COA-R3-CV - Filed March 13, 2003

---

This appeal involves a dispute between an employee and her former employer over severance pay. After the employee obtained a $13,750 judgment in the Metropolitan General Sessions Court of Davidson County, the employer perfected a de novo appeal to the Circuit Court for Davidson County. Following a bench trial, the trial court concluded that the employee had a vested right to severance pay under the employer's severance policy and awarded the employee $15,262.50. The employer has appealed. We have determined that the employer's severance policy contained an enforceable contractual obligation to pay severance pay to eligible employees. In the absence of proof that the employee was ineligible, we find that the trial court correctly interpreted and applied the severance policy. Accordingly, we affirm the judgment.

### Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Mark C. Travis, Cookeville, Tennessee, for the appellant, Lincoln Brass Works, Inc.

Alan D. Johnson, Nashville, Tennessee, for the appellee, Barbara Vargo.

### OPINION

### I.

In March 1988, Barbara Ann Vargo went to work as a receptionist and billing clerk for Lincoln Brass Works, Inc. in its Detroit, Michigan plant. She was an at-will employee. When Lincoln Brass Works moved its sales office from Detroit to Nashville in 1993, Ms. Vargo moved to the new Nashville office and worked there as an office manager and administrative assistant.

In 1997, Lincoln Brass Works terminated four employees as part of a reduction in force. The three employees who had been working in the Nashville office received severance pay. In July 1998, Lincoln Brass Works terminated twenty-one more employees in a second reduction in force. Ms. Vargo was the only Nashville employee to lose her job. None of the employees terminated as a result of this reduction in force received severance pay because the company was in a "cash crunch."

According to its chief financial officer, Lincoln Brass Works "couldn't afford severance for anyone" because the company did not know whether it had enough funds to meet its obligations for raw materials and other direct labor costs.

In December 1998, Ms. Vargo sued Lincoln Brass Works in the Metropolitan General Sessions Court of Davidson County seeking severance pay pursuant to a company "severance policy" that had been adopted in 1996. In January 1999, the general sessions court awarded Ms. Vargo $13,750, and Lincoln Brass Works perfected a de novo appeal to the Circuit Court for Davidson County. Thereafter, in March 1999, Lincoln Brass Works formally rescinded its severance policy. Following a bench trial, the trial court concluded that Ms. Vargo had a "vested right to severance pay under the facts" and awarded Ms. Vargo severance pay and prejudgment interest in the amount of $15,262.50.[1] Lincoln Brass Works has appealed.

## II.

The pivotal issues in the case involve the legal significance and meaning of Lincoln Brass Works's 1996 severance policy. Ms. Vargo asserts that the policy is part of her contract of employment and, therefore, that she is entitled to severance pay in accordance with the terms of this policy. For its part, Lincoln Brass Works insists that its severance policy was not a contractual obligation, and, therefore, that Ms. Vargo did not have a vested right to be paid severance when she was terminated in July 1998.

These issues are purely questions of law because they call for the construction and interpretation of Lincoln Brass Works's 1992 "Policies and Procedures Manual" and its 1996 "Severance Policy." Because these are questions of law, the trial court's interpretation of these documents is not entitled to a presumption of correctness on appeal. *Angus v. Western Heritage Ins. Co.*, 48 S.W.3d 728, 730 (Tenn. Ct. App. 2000). Rather, we must review the documents ourselves and make our own determination regarding their meaning and legal import. *Hillsboro Plaza Enters. v. Moon*, 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993).

## III.

An employment relationship is essentially contractual. *Hamby v. Genesco, Inc.*, 627 S.W.2d 373, 375 (Tenn. Ct. App. 1981). Its terms and conditions are supplied from two sources – applicable federal and state law and the agreement of the parties. An employment agreement may be written, oral, or a combination of the two. If written, it may be memorialized in a single document or in a series of documents.

It is not uncommon for employers to include some, but not all, of the terms of their agreements regarding wages, hours, and conditions of employment in an employee handbook or manual. Accordingly, these handbooks or manuals may include contractually enforceable promises on the part of the employer. *King v. TFE, Inc.*, 15 S.W.3d 457, 461 (Tenn. Ct. App. 1999). However, before a particular provision in an employee handbook or manual will be construed to be

---

[1] $13,750 [severance pay] + $1,512.50 [prejudgment interest] = $15,262.50.

contractually binding, the relevant language in the manual or handbook, viewed in light of all the documents pertaining to the contract of employment, must reflect the employer's intent to be bound by the particular provision. *Rose v. Tipton County Works Dep't*, 953 S.W.2d 690, 692 (Tenn. Ct. App. 1997); *Smith v. Morris*, 778 S.W.2d 857, 858 (Tenn. Ct. App. 1988).

The courts will construe provisions in an employee handbook or manual stating that the employer either guarantees or unequivocally commits to provide a particular benefit or condition of employment to be contractually binding on the employer.[2] However, the courts will decline to construe an employee handbook or manual to contain enforceable contractual obligations if the handbook or manual states that it is not intended to be a contract[3] or that the provisions in the manual are subject to unilateral change by the employer without the employee's consent.[4]

Whether an employee handbook or manual contains contractually enforceable terms depends upon the specific language used in the handbook or manual. *Rose v. Tipton County Pub. Works Dep't*, 953 S.W.2d at 692. The interpretive rules used to determine what the language means are the same as the rules used to construe contracts. Accordingly, the courts will focus on the four corners of the manual or handbook and the other related employment documents and will construe these documents as written. They will also give the terms in the documents their natural and ordinary meaning, *Williams v. Maremont Corp.*, 776 S.W.2d 78, 80 (Tenn. Ct. App. 1988), and will construe these terms in the context of the entire agreement.

The courts will not make a new contract for parties who have spoken for themselves, *Petty v. Sloan*, 197 Tenn. 630, 640, 277 S.W.2d 355, 359 (1955), and will not relieve parties of their contractual obligations simply because these obligations later prove to be burdensome or unwise. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 223 (Tenn. Ct. App. 2002). Thus, when called upon to interpret a contract, the courts will not favor either party. *Marshall v. Jackson & Jones Oils, Inc.*, 20 S.W.3d 678, 682 (Tenn. Ct. App. 1999). However, when a contract contains ambiguous or vague provisions, these provisions will be construed against the party responsible for drafting them. *Hanover Ins. Co. v. Haney*, 221 Tenn. 148, 153-54, 425 S.W.2d 590, 592-93 (1968); *Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 598 (Tenn. Ct. App. 1999).

Neither the 1992 Policies and Procedures Manual nor the 1996 Severance Policy explicitly states that Lincoln Brass Works guarantees the payment of severance pay or any other benefits. Nor

---

[2] *Reed v. Alamo Rent-A-Car, Inc.*, 4 S.W.3d 677, 687 (Tenn. Ct. App. 1999) (finding an enforceable contract in a document stating that it was the "entire agreement of employment" and that the employer agreed to abide by all of its terms and conditions); *Hamby v. Gensco, Inc.*, 627 S.W.2d at 376 (finding an enforceable contract in an employee handbook stating that it contained the employer's "guaranteed policies, practices, and procedures" as long as the employment relationship continued).

[3] *Guekel v. Cumberland-Swan, Inc.*, No. 01A01-9410-CV-00482, 1995 WL 386558, at *3 (Tenn. Ct. App. June 30, 1995) (No Tenn. R. App. P. 11 application filed); *Gaines v. Response Graphics, Inc.*, No. 01A01-9204-CV-00181, 1992 WL 319441, at *2 (Tenn. Ct. App. Nov. 6, 1992) (No Tenn. R. App. P. 11 application filed); *Crigger v. Columbia Power & Water Sys.*, No. 01A01-9001-CV-00036, 1990 WL 121570, at *2 (Tenn. Ct. App. Aug. 24, 1990), *perm. app. denied* (Tenn. Jan. 28, 1991).

[4] *King v. TFE, Inc.*, 15 S.W.3d at 461-62; *Rose v. Tipton County Pub. Works Dep't*, 953 S.W.2d at 693-94; *Bringle v. Methodist Hosp.*, 701 S.W.2d 622, 624 (Tenn. Ct. App. 1985).

do they contain a specific disclaimer that they are not intended to be contracts or that they are subject to unilateral revision by Lincoln Brass Works. The Severance Policy states that it "is designed to provide a period of income after termination to eligible employees" and that

> Severance payments will be paid at the rate of one half month's salary for each full year of employment, as of the termination date, with a maximum payment of six months (deductions will be made as required by law).

It also states that Lincoln Brass Works's management "has sole discretion to determine eligibility for severance pay."

In the absence of more general language regarding Lincoln Brass Works's contractual intentions regarding the benefits offered in its Policies and Procedures Manual or Severance Policy, the most significant phrase illuminating what Lincoln Brass Works had in mind with regard to severance pay is the statement "[s]everance payments will be paid." The choice of the phrase "will be paid" could have one of two meanings in this context. First, because the Policies and Procedures Manual and Severance Policy are "adhesion contracts,"[5] it could reflect Lincoln Brass Works's obligation to pay severance benefits. Second, it could express a future contingency. BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE 941-42 (2d ed. 1995). Contracts of adhesion are construed against their drafters. *Griffin v. Shelter Mut. Ins. Co.*, 18 S.W.3d 195, 199-200 (Tenn. 2000). Accordingly, we construe the Severance Policy against Lincoln Brass Works and find that it embodies an enforceable obligation to pay severance benefits to "eligible employees."

The discretion that Lincoln Brass Works retained in the Severance Policy did not involve determining whether or not to pay severance pay but rather involved determining whether a particular employee was "eligible" to receive severance pay. According to the policy, an employee's eligibility to receive severance pay did not depend on the company's cash flow but rather on whether the employee had voluntarily terminated his or her employment or had been "discharged for cause."[6] Thus, Lincoln Brass Works's reservation of its prerogative to determine whether a particular employee was eligible to receive severance pay is not inconsistent with our conclusion that eligible employees had a vested right to receive severance pay from the time the policy was adopted until the time it was formally rescinded.

The cases relied on by Lincoln Brass Works do not support its argument that retaining the discretion to determine whether an employee is eligible to receive severance pay permits an employer to deny severance pay to otherwise eligible employees. *MacDougal v. Sears, Roebuck & Co.*, 624 F. Supp. 756 (E.D. Tenn. 1985) involves an employee who sought severance pay even

---

[5]An adhesion contract is simply a standard printed contract prepared by one party to be signed by the party in a weaker bargaining position who has little choice about the terms of the contract. *Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn. 1996) (characterizing an adhesion contract as a standardized contract offered on an essentially "take it or leave it" basis without affording a reasonable opportunity to bargain).

[6]The Severance Policy states that a discharge for cause "shall be for reasons determined by Company management and shall include, but not be limited to, unsatisfactory performance and misconduct."

though he had been terminated for "wrongful conduct."  The United States District Court granted the employer's motion for summary judgment and dismissed the claim because (1) the personnel manual stated that severance pay would not be given to employees terminated for willful misconduct and (2) the manual itself specifically disclaimed providing employees "any additional rights to employment or employment benefits." *MacDougal v. Sears Roebuck & Co.*, 624 F. Supp. at 759.

*Abbott v. Kellwood Co.*, Gibson Law. No. 1, 1985 WL 661896 (Tenn. Ct. App. Aug. 23, 1985) involved a group of employees who were discharged when a manufacturing plant was sold as a going concern to another company.  The employees filed suit seeking vacation and severance pay. The trial court determined that the labor contract indicated that severance pay "was intended only to be paid where the employees did not have new employment lined up" and that each employee suing for severance pay had, in fact, been hired by the purchaser of the plant.[7]  Because the employees seeking severance pay had "new employment lined up," this court concluded that the trial court "had a reasonable basis upon which to deny severance pay." *Abbott v. Kellwood Co.*, 1985 WL 661896, at *3.[8]

In *Abbott v. Kellwood Company*, we concluded that the employees could not "reasonably rely on the promise of severance pay except in the discretion of the company." *Abbott v. Kellwood Co.*, 1985 WL 661896, at *4.[9]  Based on the specific language in the 1996 Severance Policy, we find that Lincoln Brass Works's employees could reasonably rely on the company's promise of severance pay except when the company, in its discretion, determined that an employee was not eligible to it. Under the terms of the Severance Policy, an employee's eligibility to receive severance pay depended only on the circumstances surrounding his or her termination.  Employees who quit voluntarily or who were terminated for cause were not eligible to receive severance pay.  Because this record contains no evidence that Ms. Vargo quit voluntarily or was terminated for cause, we conclude that the trial court had a reasonable factual basis for determining that she was entitled to severance pay under Lincoln Brass Works's Severance Policy.

---

[7]Earlier in its opinion, this court noted that the employees were discharged when Kellwood Company sold its plant as a going concern to Active Generation, Inc. and that many of the discharged Kellwood employees were immediately hired by Active Generation, Inc. without any interruption in their work. *Abbott v. Kellwood Co.*, 1985 WL 661896, at *1.

[8]This court also stated that the "policy" of the labor contract "indicated" that there was no meeting of the minds with respect to severance pay because the decision to give severance pay was "unilateral," the employees "did not contribute to secure the right," and the "reservation is absolute." *Abbott v. Kellwood Co.*, 1985 WL 661896, at *4. Because the opinion does not set out the disputed severance pay section, we cannot determine reliably what language prompted the conclusion that decisions regarding severance pay were unilateral or that the reservation [of the obligation to pay severance pay] was absolute.

[9]We decline to follow *Abbott v. Kellwood Company* to the extent that its outcome may have been predicated on the company's reservation of the right to decide whether an employee was eligible to receive severance pay.  An employer's reservation of the right to determine an employee's eligibility to receive an employment benefit does not necessarily mean that eligible employees do not have an enforceable contractual right to that benefit.  Under the facts in the *Abbott v. Kellwood* opinion, the employees seeking severance pay were not eligible to receive it because they already had new employment lined up.

Written contracts whose terms are plain and unambiguous should be enforced according to their plain terms. *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975); *Pitt v. Tyree Org. Ltd.*, 90 S.W.3d 244, 252 (Tenn. Ct. App. 2002). Accordingly, the post-contracting conduct of the parties does not figure prominently in the analysis when a court is called upon to construe and give effect to an unambiguous contract. However, when a particular contractual provision is ambiguous, the "rule of practical construction" permits the courts to use the contracting parties' conduct and statements regarding the disputed provision as guides in construing and enforcing the contract. *Fidelity-Phenix Fire Ins. Co. v. Jackson*, 181 Tenn. 453, 466-67, 181 S.W.2d 625, 631 (1944); *American Barge Line. Co. v. Jones & Laughlin Steel Corp.*, 179 Tenn. 156, 173-74, 163 S.W.2d 502, 509 (1942); *Williamson County Broadcasting Co. v. Intermedia Partners*, 987 S.W.2d 550, 552 (Tenn. Ct. App. 1998).

We have already noted that the Severance Policy's use of the phrase "[s]everance payments will be paid" is ambiguous because it could connote either an obligation or a future contingency. Our construction of this language as connoting a contractual obligation to pay severance pay to eligible employees is buttressed by the evidence regarding Lincoln Brass Works's interpretation and application of the clause after its adoption in 1996. Prior to the 1998 reduction in force, Lincoln Brass Works had consistently paid severance benefits to employees who had not quit voluntarily or who had not been terminated for cause. Business employers are rarely gratuitous when it comes to their employees' salary and benefits. Accordingly, the company's practice of consistently paying eligible employees severance pay fairly reflects its understanding that it was contractually obligated to do so.

## IV.

We affirm the judgment and remand the case to the trial court for further proceedings consistent with this opinion. We tax the costs of this appeal to Lincoln Brass Works, Inc. and its surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE