IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 14, 2005 Session

## HARRY DOUGLAS LANE v. HARRY LANE, HENDERSON, HUTCHERSON, & McCULLOUGH, PLLC., E. LADDELL McCULLOUGH, CPA, HARRY LANE NISSAN, INC., and JEFFREY E. CAPPO

**Direct Appeal from the Chancery Court for Knox County**
**No. 146351-1    Hon.  John F. Weaver, Chancellor**

---

**No. E2003-02763-COA-R3-CV - FILED APRIL 14, 2005**

---

In this dispute over the plaintiff's share in the proceeds of the sale of the business, the Trial Court awarded Judgment to plaintiff in the amount of $571,453.00, plus interest based on the "sales price" as found by the Judge.  On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

David L. Bacon, Knoxville, Tennessee for appellant.

Linda J. Hamilton Mowles, Knoxville, Tennessee, for appellee.

### OPINION

This action originated when the plaintiff Harry Douglas Lane, ("plaintiff"),sued Harry Lane (plaintiff's father), E. Ladell McCullough, CPA., Henderson, Hutcherson, & McCullough, PLLC., Harry Lane Nissan, Inc., and Jeffrey E. Cappo.

Plaintiff alleged that the capital stock (26,140 shares) in Harry Lane Nissan, Inc., was owned by the parties with plaintiff owning 6,535 shares and Lane owning 19,605 shares.  Plaintiff alleged that an agreement was reached with Cappo for the purchase of these shares, but that on

January 22, 1997, defendant Lane surrendered 4,775.5 of his shares to Harry Lane Nissan, Inc., and received consideration of $594,080.00 for the shares, which left plaintiff with 6,535 shares and defendant Lane with 14,829.5 shares, for a total of 21,364.5 shares. Plaintiff alleged that these shares were sold to Cappo for $2,657,770.00. $1,000,000.00 was paid down and the rest was financed. Plaintiff concluded that he had received none of the proceeds of said sale.

Defendant, Harry Lane, answered, admitting that he surrendered 4,775.5 shares of his stock in the dealership for $594,080.00, and admitted that he transferred his remaining shares of stock to Cappo. He also admitted his prior working relationship with McCullough and his firm, and denied all other allegations in the Complaint.

Plaintiff amended his Complaint, asserting that defendants had caused him to incur substantial tax liability, as well as medical expenses, and that Cappo was also involved in the scheme against plaintiff, and that defendants had fraudulently induced Cappo to breach his contract with plaintiff, entitling plaintiff to treble damages, plus the fact that he had been cheated out of his bonus for 1996.

Defendant Lane filed an Answer to the Amended Complaint, denying all of the allegations. Plaintiff and defendant Lane then filed an agreed Order on October 29, 2001, stating that they had reached a settlement as to their disputes, and that the settlement would be filed under seal. All other issues were reserved, and the Order was approved by the Trial Court.

On July 8, 2002, plaintiff filed a Motion asking the Court to determine the amount due to plaintiff pursuant to the settlement agreement. Plaintiff averred that the settlement provided he would be paid 25% of the 1997 sales price of the stock in the dealership, less an adjustment to the net worth and "any other expenses of Harry Lane Nissan, Inc., paid personally by Harry Lane." Plaintiff alleged that the sales price of the stock was $3,251,850.00, and the net worth adjustment was $233,850.00, and he was not aware of any expenses paid by defendant Lane. Plaintiff claimed he was owed $821,296.39, plus interest on that amount.

The court conducted a hearing on July 23, 2002, and entered an Order denying relief to plaintiff.

A subsequent hearing was conducted on April 28, 2003, and Ladell McCullough testified that she was a CPA with Henderson, Hutcherson & McCullough, PLLC, and that she had been CPA for Harry Lane and his businesses for several years. She testified the trial balance worksheet for Harry Lane Nissan dated 12/31/96 showed accounts receivable for officers of $310,736.84. Counsel had stipulated there was a redemption of stock whereby defendant Lane received $594,080.00 from Harry Lane Nissan.

She further testified that defendant Lane had to pay $8,200.00 to the IRS after closing due to an IRS audit, which amount was actually owed by Harry Lane Nissan, and that the 1997 sales price of the dealership was $2,657,770.00 according to the First Amendment to the Stock Purchase

Agreement, and the closing statement dated January 24, 1997. Further that the First Amendment states that the company purchased some of defendant Lane's shares for $594,080.00, and the purchase price for the dealership was then amended to $2,657,770.00. She testified that initially, the purchase price calculation as of 1/1/97 showed $3,251,850.00 before the adjustment for redemption of the stock.

Harry Lane testified that he and his son Doug entered into a settlement agreement on 10/3/01, which was filed as Exhibit 15 (under seal), and that the 1997 sales price was $2,657,770.00. He testified that he had paid expenses of $273,385.00 for the dealership, and that he had paid a broker fee to the broker who sold the dealership, of $75,000.00. Lane testified that Cappo also paid a portion of the broker fee, but Doug did not. Further that Lane paid $3,304.31 in attorney's fees at closing, and that Doug paid no portion of that expense. Further, Lane testified that he had paid $11,599.94 in accountant fees. He testified that other payments were made on behalf of the dealership. Finally, Lane testified to the calculated amount he believed was owed to Doug pursuant to the settlement using simple interest, and not compound interest, and his counsel represented that the interest rates they relied upon were: 9.5 up to January 23, 2001, 5.25 from January 24, 2002 to January 24, 2003, and 4.75 for the remainder of 2003.

After closing arguments, the Court ruled that defendant Lane owed plaintiff $571,453.16 plus interest, and the Judgment was certified pursuant to Tenn. R. Civ. P. 54.02.

The Court, in its Memorandum Opinion, found that the term "1997 sales price" referred to the price listed in the First Amendment to Stock Purchase Agreement. The Court said that plaintiff wanted to rely on the figure shown in the original Stock Purchase Agreement, but plaintiff knew that this document had been amended and the sales price changed, and the settlement was entered into by the plaintiff with this knowledge. The Court discussed the expenses and whether they were expenses of the dealership paid by defendant Lane, and found that plaintiff's interest calculations were correct, and held that compound interest would begin when the Cappo note went into default, which the court found to be January 24, 2002.

The issues presented for review on appeal are:

1.      Whether plaintiff waived his right to appeal by failing to file a timely Notice of Appeal?

2.      Whether plaintiff waived his issues on appeal because his brief does not comply with the Tennessee Rules of Appellate Procedure or the Rules of the Court of Appeals?

3.      Whether the "1997 sales price" of the dealership should include the price of the stock redeemed?

4.      Whether a note is in default because the payor was paying only one of the

two designated payees?

Defendant asserts that plaintiff's appeal is untimely because his notice was not filed within 30 days of the Trial Court's judgment. The Judgment was entered on July 23, 2003, and plaintiff filed a "Petition to Reconsider" on August 11, 2003. Defendant argues that such motion is not recognized by Tenn. R. App. P. 4(b) as one which will toll the appeal period. This section provides for a motion filed pursuant to Tenn. R. Civ. P. 50.02 (for judgment in accordance with a motion for directed verdict), 52.02 (to amend or make additional findings of fact), 59.02 (for new trial), or 59.04 (to alter or amend the judgment). These motions toll the time for filing a notice of appeal. Tenn. R. App. P. 4(b).

Plaintiff argues that his motion was, in substance, a Tenn. R. Civ. P. 59.04 motion to alter or amend the judgment. This issue is tested by the substance of the Motion, vis a vis the title of the Motion. *Tennessee Farmers Mut. Ins. Co. v. Farmer*, 970 S.W.2d 453, 455 (Tenn. 1998); *also see, McCullough v. Johnson City Emergency Physicians, P.C.*, 106 S.W.3d 36 (Tenn. Ct. App. 2002); *Savage v. Hildenbrandt*, 2001 WL 1013056 (Tenn. Ct. App. Sept. 6, 2001). In this case plaintiff's "Petition to Reconsider" is properly construed as a motion to alter or amend, pursuant to Tenn. R. Civ. P. 59.04. Since it was timely filed, the appeal period would begin to run from the Trial Court's Order denying that Motion. Defendant concedes in his brief that plaintiff's Notice of Appeal was timely filed from the date of the Court's Order on the post-trial Motion.[1]

The defendant argues plaintiff's brief is inadequate and does not comply with the Tennessee Rules of Appellate Procedure nor the Rules of the Court of Appeals, because the only authority referenced is a statute. From our review we conclude, however, that the plaintiff's brief is not so "woefully deficient" in meeting the requirements of the rules that plaintiff's issues should be deemed waived. *See Bean v. Bean*, 40 S.W.3d 52 (Tenn. Ct. App. 2000). Plaintiff's brief sets forth the issues and arguments succinctly, and does not "expect this court to do its work". *Id.* The issue is without merit.

The settlement agreement which is the subject of dispute in this case states that "Plaintiff is acknowledged to have been an owner of twenty-five percent (25%) of the corporation known as Harry Lane Nissan, Inc." and further states that "Harry Lane shall pay to Plaintiff an amount equal to twenty-five percent (25%) of the 1997 sales price". The undisputed proof at trial was that the dealership sold in 1997 for $2,657,770.00, which plaintiff conceded in his original Complaint.

However, plaintiff argues that the actual sales price of the company should include the $594,080.00 that was "paid" to defendant Lane for a portion of his stock. Plaintiff did not testify

---

[1] It is noted that defendant filed a timely "Response and Motion" in which defendant specifically asked the court to alter or amend the judgment to reduce the interest rate and eliminate compounding. Based on the foregoing authority, this motion would clearly have tolled the appeal time as well.

or present any proof that the term "1997 sales price" as used in the settlement agreement was supposed to include this amount. Both defendant Lane and McCullough testified that $2,657,770.00 was the sales price of the company, and the amended purchase agreement and closing documents reflect this price.

As the Supreme Court recently explained in *Doe v. HCA Health Services of Tennessee, Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001):

> A contract " 'must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced.' " *Higgins v. Oil, Chem., and Atomic Workers Int'l Union, Local # 3-677,* 811 S.W.2d 875, 879 (Tenn. 1991) (quoting *Johnson v. Central Nat'l Ins. Co. of Omaha*, 210 Tenn. 24, 34-35, 356 S.W.2d 277, 281 (Tenn. 1962) (citations omitted)). Indefiniteness regarding an essential element of a contract "may prevent the creation of an enforceable contract." *Jamestowne On Signal, Inc. v. First Fed. Sav. & Loan Ass'n*, 807 S.W.2d 559, 565 (Tenn. Ct. App.1990) (citing *Hansen v. Snell*, 11 Utah 2d 64, 354 P.2d 1070 (1960)). A contract " 'must be of sufficient explicitness so that a court can perceive what are the respective obligations of the parties.' " *Higgins*, 811 S.W.2d at 880 (quoting *Soar v. National Football League Players' Ass'n*, 550 F.2d 1287, 1290 (1st Cir.1977)); see also Restatement (Second) of Contracts § 33(2) (1981) ("The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.")

The term "1997 sales price" is demonstrated by the documents relating to the sale of the dealership, including the Stock Purchase Agreement, the First Amendment to the same, and the Promissory Note. The settlement agreement is not ambiguous, and the amount is clearly set forth. Accordingly, "[w]ritten contracts whose terms are plain and unambiguous should be enforced according to their plain terms." *Vargo v. Lincoln Brass Works, Inc.*, 115 S.W.3d 487, 494 (Tenn. Ct. App. 2003). The Trial Court made a correct determination of this issue, and is affirmed.[2]

Finally, plaintiff argues the Trial Court erred in failing to find that the maximum legal rate of interest would apply from the beginning of the Cappo note, because, as plaintiff states "it is undisputed in this case that Jeffrey Cappo was making his payments under the Note only to Harry Lane, and not to Harry Douglas Lane". Thus, plaintiff argues that Cappo never paid as agreed, because the note says that he will "pay to the order of Harry Lane and Harry Douglas Lane", and if the note is in default, then the interest rate increases.

The only proof introduced at trial was that Cappo paid his payments in full every month until January 24, 2002. The note required that payments be made on time, not that they

---

[2]Plaintiff argues that the agreement is ambiguous and that the redemption of the stock actually increased the value of the dealership. However, plaintiff offered no proof.

specifically had to be made to the father and son separately.  The note did not set out separate amounts to be paid to each, and the note states the monthly installments would be payable at 8836 Rosemont Boulevard, Knoxville, Tennessee 37923, which is the address listed on defendant Lane's checks. There is no proof that the payments were not sent to that address in a timely fashion until January 24, 2002, nor is there any proof regarding who the payments were made payable to. Moreover, while plaintiff argues that the note was in default as to him from the beginning, he did not offer any proof that he ever notified Cappo in writing of the default as the note requires. We find this argument to be without merit, and we affirm the Trial Court's Judgment in all respects, as the evidence supports the Trial Court's ruling regarding the interest as it related to the promissory note.

The cost of the appeal is assessed to the plaintiff, Harry D. Lane.


_____
HERSCHEL PICKENS FRANKS, P.J.