# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
August 27, 2012 Session

## PEDIATRIX MEDICAL GROUP OF TENNESSEE, P.C., v. VICTOR J. THOMAS, M.D., et al.

**Appeal from the Circuit Court for Hamilton County**
**No. 11C367     Hon. W. Jeffrey Hollingsworth, Judge**

---

**No. E2011-02421-COA-R3-CV-FILED-OCTOBER 29, 2012**

---

This action arises out of a dispute between the parties on issues arising out of an employment contract. The parties have been before this Court previously on this contract, and we ruled that they were required to arbitrate the issues, and remanded the case. Plaintiff employer filed a declaratory judgment action as a dispute arose over the selection of arbitrators. The employer had selected its arbitrator, and the Trial Judge ruled that its selection was appropriate and that the Trial Court did not have jurisdiction to determine whether the selected arbitrator was proper under the American Health Lawyers Association rules of procedure for arbitration. On appeal, we affirm the Judgment of the Trial Court.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

John C. Harrison, and Jennifer H. Lawrence, Tennessee, for the appellants, Victor J. Thomas, M.D., and Lizbeth A. Kennedy, M.D.

Stephen D. Barham and Nathaniel S. Goggans, Chattanooga, Tennessee, for the appellee, Pediatrix Medical Group of Tennessee, P.C.

# OPINION

This is an appeal from a grant of summary judgment in favor of plaintiff against defendants, in a declaratory judgment action.

This action arises out of an employment contract dispute between plaintiff and its two employees, Drs. Thomas and Kennedy, defendants. The Doctors had entered into identical employment contracts with plaintiff, that contained an arbitration clause whereby any dispute arising out of the contracts would be submitted to arbitration. This dispute arose when the defendants' terms of employment expired in 2009.

On June 12, 2009, the Doctors filed a Complaint for Declaratory Judgment against Pediatrix, and in that suit the Doctors sought the Court's determination as to the legality of the restrictive covenants contained in the employment agreements.[1] In that case the Chancery Court denied the Motion to Dismiss, and refused to order the parties to arbitration. On appeal, this Court issued an opinion reversing the judgment of the Chancery Court and holding that all issues arising from the employment agreements must be arbitrated. *See Thomas et al. v. Pediatrix,* E2009-01836-COA-R3-CV, 2010 WL 3564424 (Tenn. Ct. App. Sept. 14, 2010).

In the case before us, plaintiff filed a Motion for Summary Judgment, and the Circuit Court granted the Motion for Summary Judgment, holding that Pediatrix's selection of a Mr. Lemons as its arbitrator was in compliance with the provisions of the contracts. Defendants filed a Motion to Alter or Amend, as did Pediatrix. The Trial Court entered an order granting the motions to amend holding that: (1) it did not have subject matter jurisdiction to decide whether Mr. Lemons should be disqualified as such decision must be made in the arbitration process; (2) the Doctors must choose an arbitrator within forty-five days of entry of the order and: (3) the October 11, 2011 order is a final judgment, granting Pediatrix's complaint for declaratory judgment and dismissing the Doctors' counterclaim.

Defendants have appealed and raise these issues:

A. Was the Trial Court correct when it granted Pediatrix's Motion for Summary Judgment and held that the parties' choice of arbitrators was not limited to those arbitrators included on the AHLA's resolver list furnished to the parties?

B. Was the Trial Court correct when it sustained Pediatrix's Motion for Summary

---

[1] *See Victor J. Thomas, M.D., Lisbeth A. Kennedy, M.D. and Regional Obstetrical Consultants, P.C. v. Pediatrix Medical Group of Tennessee, P. C.*, Case No. 09-0437.

Judgment and held that it lacked subject matter jurisdiction to rule on whether Mr. Lemons should be disqualified as an arbitrator?

The granting or denying of a motion for summary judgment is a matter of law, and our standard of review is *de novo* with no presumption of correctness. *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010)(citing *Blair v. W. Town Mall,* 130 S.W.3d 761, 763 (Tenn.2004)). Summary judgment should be rendered "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. Here, the parties agree that there were no issues of material fact before the Trial Court.

The first issue pertains to the interpretation of the employment contracts entered into by the parties. The interpretation of a contract is a matter of law that we review *de novo* on the record according no presumption of correctness to the trial court's conclusions of law. *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611-12 (Tenn. 2006)(citing *Guiliano v. Cleo, Inc., 995 S.W.2d 88, 95 (*Tenn.1999); Union Planters v. Nat'l. *Home Assurance Co.,* 865 S.W.2d. 907, 912 (Tenn.Ct.App.1993)). The second issue on appeal is one of subject matter jurisdiction. Since a determination of whether subject matter jurisdiction exists is a question of law, our standard of review is *de novo*, without a presumption of correctness. *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000)(citing *Nelson v. Wal–Mart Stores, Inc.,* 8 S.W.3d 625, 628 (Tenn.1999)).

Appellants contend that the Trial Court was in error when it granted Pediatrix's motion for summary judgment based on its interpretation of the arbitration clause in the employment contracts. Appellants articulate three errors the Trial Court made when it found the arbitration clause did not require that the parties select arbitrators from the Dispute Resolver List provided by AHLA.

First, appellants contend that the Trial Court failed to properly give effect to the intent of the parties to the employment agreements, including the arbitration clause. Appellants' second argument is that the Trial Court simply misinterpreted the arbitration clause when it found that AHLA Rules do not apply to the arbitration process required by the contract. Third, appellants state the Trial Court should have found that Pediatrix's own conduct showed its implicit agreement to select an arbitrator from the AHLA's Dispute Resolver List.

Our Supreme Court, in *Allstate v. Watson*, 195 S.W.3d 609, set out the basic rules of contract interpretation Tennessee courts employ:

A cardinal rule of contract interpretation is to ascertain and give effect to the intent

of the parties. *Christenberry v. Tipton,* 160 S.W.3d 487, 494 (Tenn. 2005). In interpreting contractual language, courts look to the plain meaning of the words in the document to ascertain the parties' intent. *Planters Gin Co. v. Fed. Compress & Warehouse Co.,* 78 S.W.3d 885, 889–90 (Tenn.2002). This Court's initial task in construing the lease at issue is to determine whether the language is ambiguous. *Id.* at 890. If the language is clear and unambiguous, the literal meaning controls the outcome of the dispute. *Id.* If, however, the words in a contract are susceptible to more than one reasonable interpretation, the parties' intent cannot be determined by a literal interpretation of the language. *Id.*

Contractual language "is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one." *Farmers–Peoples Bank v. Clemmer,* 519 S.W.2d 801, 805 (Tenn.1975).

\* \* \* \*

When contractual language is found to be ambiguous, the court must apply established rules of construction to determine the intent of the parties. *Planters Gin Co.,* 78 S.W.3d at 890. An ambiguous provision in a contract generally will be construed against the party drafting it. *Hanover Ins. Co. v. Haney,* 221 Tenn. 148, 425 S.W.2d 590, 592 (1968); *Vargo v. Lincoln Brass Works, Inc.,* 115 S.W.3d 487, 492 (Tenn.Ct.App.2003). Furthermore, when a contractual provision is ambiguous, a court is permitted to use parol evidence, including the contracting parties' conduct and statements regarding the disputed provision, to guide the court in construing and enforcing the contract. *See Memphis Housing Auth. v. Thompson,* 38 S.W.3d 504, 512 (Tenn.2001); *Fidelity–Phenix Fire Ins. Co. of New York v. Jackson,* 181 Tenn. 453, 181 S.W.2d 625, 631 (1944); *Vargo,* 115 S.W.3d at 494.

*Allstate v. Watson*, 195 S.W.3d 611-12.

Our first task in ascertaining the parties' intent in forming the contract is to examine the words of the contract. If the plain meaning of the language in the contract is clear and unambiguous, the literal meaning controls the outcome of the dispute. Only if we find that language of the arbitration clause "is of uncertain meaning and may fairly be understood in more ways than one" will the Court, as appellants suggest, look to the contracting parties' conduct and statements regarding the disputed provision to guide the Court in construing and enforcing the contract.

We have concluded that the arbitration clause is not ambiguous, and the contractual language at issue is in three sentences contained in the arbitration clause:

-4-

(1)Any controversy or claim arising out of or relating to this Agreement, or any alleged breach hereof . . . shall be finally determined by binding arbitration before a three member panel, consisting of one member selected by each party hereto, with the third member selected by the first two arbitrators. (2) Each party hereto shall bear the costs of its own nominee, and shall share equally the cost of the third arbitrator. (3)The arbitration proceedings shall be held in Chattanooga, Tennessee, unless otherwise mutually agreed by the parties, and shall be conducted in accordance with the American Health Lawyer's Association Dispute Resolution Service, Rules of Procedure for Arbitration.

The issue before the Court is whether the language in the third sentence places limits or restrictions on the first sentence. The first sentence simply states that each party gets to select an arbitrator and that the two selected arbitrators appoint the third. The first sentence places no restrictions or qualifications on the arbitrator each party will select. The third sentence does contain limitations on how and where the arbitration proceedings are to be conducted. The proceedings are to occur in Chattanooga and conducted pursuant to AHLA Rules. The issue thus becomes whether the provision that arbitration proceedings be conducted in accordance with the AHLA Rules means that the parties also are limited to the default method provided in the Rules for the arbitrator selection and formation of the arbitral forum? Appellee maintains that it made its selection of Mr. Lemons by applying a "clear, straight-forward reading" of the arbitration clause. The Trial Court agreed, and ruled that the unambiguous reading of the clause does not limit the selection of the arbitrator.

In the subject paragraph no restrictions or rules are placed on the parties choice of arbitrator and no restrictions or rules are placed on the two selected arbitrators' choice for the third member. This sentence is not fairly susceptible to more than one meaning. The third sentence under examination is likewise clear, the arbitration proceeding is to take place in Chattanooga . . . and be conducted under AHLA Rules. Thus, the arbitration proceeding's place and procedure is determined by this sentence. Appellants argue that arbitration proceeding encompasses the arbitrator selection process delineated in the first sentence. This interpretation is strained and inconsistent with the AHLA Rules.

First, it is strained because it would require the parties, and presumably attorneys, to be physically present in the City of Chattanooga, and no where else, when they initiate the arbitration process by looking for appropriate arbitrators. At that part of the arbitration process there is no reason that the parties would have to be in the same city and the city would be Chattanooga. At that stage the parties are not required to work together nor be in each other's presence as they would be at a hearing. Further, the idea that the agreement requires a presence in Chattanooga during arbitrator selection would mean that the two

arbitrators selected by the parties would also have to be present in Chattanooga when they jointly select the third arbitrator. We do not accept that a reasonable person could read the arbitration clause to mean that panel selection must take place in Chattanooga. Thus, the word "proceeding" in the third sentence cannot encompass the selection of arbitrators. It follows, that the application of AHLA Rules requirement for proceedings in the same sentence similarly does not apply to arbitrator selection.

Several sections of the AHLA Rules use the words "proceedings" and "hearing" interchangeably. *See* Rules 2.0, 4.06, 4.10 and 4.15. The AHLA Rules also contemplate that parties who have agreed to arbitrate under the Rules may contract to select an arbitrator or arbitrators under a procedure that differs from the procedure provided by the Rules. Rule 1.01 makes this general statement regarding the parties' rights to vary from the Rules: "*the parties may vary the procedures set forth in these Rules by written agreement.*" (italics supplied in the document). Rule 1.04 states that "[i]f the arbitration agreement does not specify the number of arbitrators, the dispute shall be heard and determined by one arbitrator. Rule 2.0 provides the procedure for selecting an arbitrator. Rule 2.01 states that "[i]f the parties have not provided in writing for any other method of selecting an arbitrator, the selection shall occur in the following manner . . . " Rules 2.01 (a) - (g), 2.02. 2.03 and 2.04 state that the parties may request a list of arbitrators and that the parties are to make their selection jointly. Thus, the AHLA Rules provide a default procedure for selecting an arbitrator to be followed by the parties only if the arbitration agreement does not provide a method for the selection. Here, there is no dispute that the arbitration clause in the employment contracts provides a methodology for arbitrator selection. Each party is to select one arbitrator and the two selected arbitrators are to select a third. The Rules clearly contemplate that parties who have agreed to arbitrate under the AHLA Rules may choose to provide for a number of arbitrators and a procedure for their selection that differs from the default procedures provided by the Rules.

Accordingly, the AHLA Rules that are to be used at the arbitration proceeding do not apply to nor restrict the parties' selection of arbitrators. We affirm the Court's ruling that the unambiguous reading of the arbitration clause does not limit the arbitrator eligibility selection.

The appellants asked the Trial Court to disqualify Mr. Lemons from acting as an arbitrator. The basis for this request is the unsupported allegation that Mr. Lemons previously functioned as an arbitrator in an arbitration in which appellee or a related entity was a successful party. The Trial Court did not err when it declined to do so based on a lack of subject matter jurisdiction. Appellee urges this Court to affirm the Trial Court's ruling based on the Tennessee Uniform Arbitration Act (TUAA), Tenn. Code Ann. § 29-5-301 *et seq.*, the terms of the employment contracts and the AHLA Rules.

The AHLA Rules provide that the parties "shall be bound by these Rules whenever they have agreed to arbitration . . . under the Rules. (Rule 1.01.) The Rules contemplate that any dispute regarding the neutrality of an arbitrator can be addressed within the context of the arbitration. Rule 7.05 states:

> If a dispute arises between or among the parties regarding a conflict of interest of the arbitrator, the mental or physical competence of the arbitrator or any similar matter in which the continued service by the arbitrator is challenged and such dispute cannot be resolved among the parties and the arbitrator, the [AHLA] Service, at its sole discretion, may resolve such issues, may remove the arbitrator, and may make a replacement appointment based on the parties' stated preference with respect to any list submitted to them, or may submit a new list to the parties.

According to Rule 7.05, appellants could have looked to the AHLA Service to resolve their concern about Mr. Lemons' impartiality, but they were not bound to under the Rules, nor was the AHLA Service bound to resolve the conflict if asked. Thus, the Rules do not support appellee's position that the courts lack subject matter jurisdiction over the issue of Mr. Lemons' neutrality.

Appellee also urges that the Doctors' Employment Contracts require that the issue of Mr. Lemons' appointment be submitted to the arbitration panel. Section XII of the Contract, the arbitration clause provides that **[a]ny controversy or claim arising out of or relating to this Agreement,** or any alleged breach hereof (except for any controversy or dispute relating to Section VII) **shall be finally determined by binding arbitration** . . . ." (emphasis added). The appointment of an arbitrator, as required by the contract, arises or relates to the contract, thus Mr. Lemons' suitability or qualifications must be arbitrated. As our Supreme Court noted: "the scope of the arbitrator's authority is determined by the terms of the agreement between the parties which includes the agreement of the parties to arbitrate the dispute." *Williams Holding Co. v. Willis*, 166 S.W.3d 707, 711 (Tenn. 2005)(citing *D & E Constr. Co. v. Robert J. Denley Co.,* 38 S.W.3d 513, 518 (Tenn.2001) (quoting *Int'l Talent Group, Inc. v. Copyright Mgmt., Inc.,* 769 S.W.2d 217, 218 (Tenn.Ct.App.1989)); *see also Arnold,* 914 S.W.2d [445] at 450 [(Tenn. 1996)].

Appellee also maintains that under the TUAA judicial review of problems with arbitrators is limited. Appellee argues that judicial review may only occur (1) after an award is made, (2) only for causes of misconduct or corruption of an arbitrator or "evident partiality" of a neutral arbitrator, and (3) only by vacating the award. *See* Tenn. Code Ann. § 29-5-313. However, Tenn. Code Ann. § 29-5-304 provides an exception to Section 313. Section 304 of the TUAA provides:

If the arbitration agreement provided a method of appointment of arbitrators, this method shall be followed. In the absence thereof, or if the agreed method fails or for any reason cannot be followed, or when an arbitrator appointed fails or is unable to act and a successor has not been duly appointed, the court on application of a party shall appoint one (1) or more arbitrators. An arbitrator so appointed has all the powers of one specifically named in the agreement.

According to Section 304 the Trial Court would have jurisdiction to appoint one or more arbitrators if the agreed method for the parties to select an arbitrator had failed or could not be followed or if the selected arbitrator fails or is unable to act. However, before assuming jurisdiction under Section 304, the method of selecting arbitrators must have "failed" or a selected arbitrator must have "failed". We hold that neither the method or Mr. Lemons could have "failed" at this stage of the arbitration because the method of selection was at the heart of the dispute that the Trial Court and this Court was required to resolve. As the method was not certain, the method cannot be said to have failed. Likewise, until the method of selection is determined, Mr Lemons' selection cannot be certain and thus, cannot have failed. While a court may have subject matter jurisdiction over this issue in the future pursuant to Tenn. Code Ann. § 29-5-304, the Trial Court was correct to dismiss the Doctors' counter-claim for lack of subject matter jurisdiction at this stage of the arbitration.

The Judgment of the Trial Court is affirmed and the cause remanded with the cost of the appeal assessed to Doctors Victor J. Thomas and Lizbeth A. Kennedy.

_____
HERSCHEL PICKENS FRANKS, P.J.