NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0502n.06

Case No. 24-5513

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Dec 06, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| KROGER SPECIALTY PHARMACY LA, LLC; KROGER SPECIALTY PHARMACY HOLDINGS 2, INC., | ) ) ) | |
| Plaintiffs-Appellees, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR |
| v. | ) ) | THE MIDDLE DISTRICT OF TENNESSEE |
| GENEFIC SPECIALTY PHARMACY, INC.; RICHARD BROOKS MADISON, | ) ) ) | OPINION |
| Defendants-Appellants. | | |

Before: SUTTON, Chief Judge; MURPHY and BLOOMEKATZ, Circuit Judges.

SUTTON, Chief Judge. At issue is whether Richard Madison violated a noncompete agreement with his former employer and whether his new employer, Genefic Specialty Pharmacy, tortiously interfered with the agreement.

I.

In February 2013, a Tennessee specialty pharmacy (Total Life) hired Madison to be its sales representative. The next year, in February 2014, another pharmacy (Modern HC Pharmacy) purchased that company as its subsidiary.

On April 1, 2015, Madison signed a one-year noncompete and non-solicitation agreement with Modern HC Pharmacy. The terms of the agreement prohibited Madison from competing with

Modern HC Pharmacy or its affiliates or successors, soliciting their customers, or recruiting their employees.

On July 16, 2016, a Kroger-affiliated entity bought Modern HC Pharmacy. Afterward, Modern HC Pharmacy was renamed Kroger Specialty Pharmacy Holdings 2, and its subsidiary Total Life was renamed Kroger Specialty Pharmacy LA (referred to collectively as the Kroger Specialty Pharmacies).

On September 15, 2023, Madison resigned. A few days later, Madison joined Genefic Pharmacy, where he began soliciting customers of the Kroger Specialty Pharmacies and speaking with their employees about working at Genefic Pharmacy.

Kroger learned of Madison's activity. The Kroger Specialty Pharmacies—the successors, recall, of Total Life and Modern HC Pharmacy—sued Madison and Genefic Pharmacy in federal court. They raised a contract claim against Madison, a tortious-interference claim against Genefic Pharmacy, and a trade-secrets claim against both of them.

On April 24, 2024, the district court preliminarily enjoined Madison from soliciting the customers of the Kroger Specialty Pharmacies, recruiting their employees, or working with Genefic Pharmacy as a representative in Tennessee, where he previously worked while employed by the Kroger Specialty Pharmacies. The order also enjoined Genefic Pharmacy from interfering with the agreement. Madison and Genefic Pharmacy appeal.

## II.

In deciding whether to grant a preliminary injunction, courts ask whether the plaintiff is likely to succeed, whether it will suffer irreparable harm without injunctive relief, and whether the balance of equities and public interest favor an injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). We review such decisions for an abuse of discretion. *Arizona v. Biden*, 40

F.4th 375, 381 (6th Cir. 2022). A court abuses its discretion by misapplying the law, by using the wrong legal standard, or by making clearly erroneous fact findings. *Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356, 366 (6th Cir. 2022). On appeal, Madison and Genefic Pharmacy challenge only the district court's likelihood-of-success determination, which we assess with fresh eyes. *See id.*

As disputes about noncompete agreements go, this one has become quite narrow. None of the conventional arguments appear. Madison and Genefic Pharmacy do not challenge the general enforceability of the noncompete agreement. They do not argue that the provisions are unduly restrictive in terms of duration or geographic scope. *See Murfreesboro Med. Clinic, P.A. v. Udom*, 166 S.W.3d 674, 678 (Tenn. 2005). They do not argue that the terms violate Tennessee public policy. *See id.* They do not contest that, if the agreement applies to Madison's actions while an employee of Modern HC Pharmacy or its successors (the Kroger Specialty Pharmacies), he breached the agreement. And they do not contest that, if the agreement obligates Madison vis-à-vis the Kroger Specialty Pharmacies, that Genefic Pharmacy's actions amounted to tortious interference with the contract.

That leaves us with a dispute about the meaning of one aspect of the noncompete agreement. Namely, in signing the agreement, did Madison obligate himself to Modern HC Pharmacy and its successors, including the Kroger Specialty Pharmacies?

Tennessee law governs the dispute, as the parties agree. It says that courts, in construing a contract, should "ascertain and give effect to the intent of the contracting parties." *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tenn., Inc.*, 566 S.W.3d 671, 694 (Tenn. 2019). In ascertaining that intent, courts mainly look to "the written words" of the contract, "the lodestar of contract interpretation." *Id.*

By its terms, this employment agreement binds Madison and Modern HC Pharmacy as well as its affiliates and successors. The noncompete clause describes the employee's and employer's "intent to be bound" and lists several "conditions of employment." *Vargo v. Lincoln Brass Works, Inc.*, 115 S.W.3d 487, 491 (Tenn. Ct. App. 2003). The agreement says that Madison "signed this Agreement" and was "willing to be bound by [its] covenants" in exchange for "continued employment" and other benefits. R.45-2 at 2, 6. It identifies Madison as an "Employee" of Modern HC Pharmacy. A later indemnification provision is described "[a]s a condition of being offered employment by the Company[.]" R.45-2 at 5. All in all, Madison agreed to be bound by this agreement as an employee of Modern HC Pharmacy and its affiliates and successors.

The agreement contains three covenants that bind Madison. The first one prohibits Madison from using or disclosing certain "materials and information of the Company or any Affiliate." R.45-2 at 3–4. The second one prohibits Madison, during his "employment with the Company" and for the following year, from owning or working for a company that sells medications in various listed areas in Tennessee and adjacent areas in nearby States. R.45-2 at 4. The third provision prohibits Madison, during this same period and in this same geographic area, from soliciting "any customer" or "any employee" "of the Company or any of its Affiliates." R.45-2 at 4. Madison agreed, then, not to disclose secrets of, compete with, or solicit employees/customers from his employer.

The contract also anticipates new corporate ownership. It defines "the Company" to include "any successor of the Company and any successor(s) of any such successor." R.45-2 at 5; R.67 at 4. As a result, when the Kroger Specialty Pharmacies purchased the relevant pharmacies, the reference to "the Company" present in all three covenants covered the succeeding Kroger Specialty Pharmacies. That Madison worked for Total Life, its original acquirer (Modern HC

4

Pharmacy), and its successor (the Kroger Specialty Pharmacies) thus does not alter his obligations under the contract with Modern HC Pharmacy: He is bound just the same.

Other evidence confirms that the parties' understanding of the agreement was consistent with its language. *See Seals v. Zollo*, 327 S.W.2d 41, 44 (Tenn. 1959). Madison acted like an employee of Modern HC Pharmacy. That explains why he submitted an Open Enrollment form to it, sought employments benefits from it, and received employment benefits from it. When the Kroger Specialty Pharmacies acquired Modern, something similar happened. They, too, treated Madison as an employee.

In challenging this conclusion, Madison and Genefic Pharmacy maintain that "Madison was never an employee of" Modern HC Pharmacy as opposed to his original employer, Total Life. Appellants' Br. 17–18. Claiming that "[p]arent companies do not automatically become the employer of their subsidiaries' employees," they insist that "there is no evidence that Madison was ever actually employed by Modern HC Pharmacy." Appellants' Br. 18 & n.2. But this argument overlooks a critical reality. At a minimum, Madison became an employee of Modern HC Pharmacy—at least for purposes of interpreting and applying the noncompete agreement—when he signed that noncompete agreement with Modern HC Pharmacy. What other conclusion could one draw from that act? Madison, notably, not only signed the agreement with Modern HC Pharmacy, but he also acted like an employee of Modern HC Pharmacy, seeking and receiving employment benefits from the company.

Madison and Genefic Pharmacy fault the district court for considering the agreement's context in defining its terms. But the context and language of the agreement are not at odds. They point in the same direction—that Modern HC Pharmacy agreed to employ Madison in exchange for his compliance with the noncompete agreement.

Madison and Genefic Pharmacy claim that the noncompete agreement is vague when it comes to subsidiaries. As they see it, the agreement should have defined the restricted period as Madison's "employment with Modern HC Pharmacy and/or its Affiliates and for one (1) year thereafter." Appellants' Br. 19 n.3. But the agreement was understandable as is. Once the agreement said that Madison worked for Modern HC Pharmacy, it had no obligation to say that he worked for another affiliate (Total Life) before that.

Their reliance on an unpublished Delaware case also fails to give them traction. *See Frontline Techs. Parent, LLC v. Murphy*, No. 2023-0546-LWW, 2023 WL 5424802 (Del. Ch. Aug. 23, 2023). In that case, the contract failed to create an employment relationship between the signatory and the parent company. *Id.* at *3. And in that case, the contract's noncompete provision "expressly" covered only the parent company's "business line," not the subsidiary's business. *Id.* at *3–4. In the course of its analysis, the court noted that the noncompete agreement would have covered the subsidiary if the provision had included the word "Affiliates"—as Madison's agreement did. *Id.* at *5. This case, in short, supports our conclusion.

A discerning reader might wonder whether the noncompete issue has run its one-year course, making moot any effort to enforce it today. *See Mktg. Displays Int'l v. Shaw*, 93 F.4th 967, 970 (6th Cir. 2024). Madison resigned in September 2023, and it has been more than one year since then. But the agreement contains a tolling provision. It extends the length of the one-year prohibition during any period of Madison's noncompliance. The provision thus remains in effect, as the parties agree. Appellants' Supp. Br. 4–5; Kroger Supp. Br. 7.

III.

Madison and Genefic Pharmacy briefly challenge the scope of the injunction under Civil Rule 65(d)(1) in their opening brief and do not respond to the plaintiffs' counter-arguments in their

reply brief. The key requirement of Rule 65(d)(1) is to ensure that the order gives "clear notice" about what the defendants "must do or refrain from doing." *Abbott v. Perez*, 585 U.S. 579, 598 (2018). The district court met this responsibility.

The key problem for Madison and Genefic Pharmacy in challenging this conclusion is that they do not disclaim understanding how the rest of the noncompete agreement works. They argue only whether it applied to Modern HC Pharmacy and its successors. With that uncertainty resolved below and again on appeal, any claims about lack of "clear notice" become difficult to maintain.

Madison and Genefic Pharmacy insist that the preliminary injunction's application to "affiliates" is unclear. But the meaning of affiliates is not complicated. It refers to an entity that a company controls or is controlled by. *Int'l Confections Co. v. Z Cap. Grp.*, No. 22-3403, 2023 WL 335285, at *2 (6th Cir. Jan. 20, 2023) (collecting cases, statutes, and dictionaries). The noncompete agreement, no surprise, defines it in the same way. The term clearly covers related companies, whether parent companies or subsidiaries. Now that we have resolved the key legal issue raised in the district court and here—was Madison an employee of Modern HC Pharmacy?— it's difficult for the two defendants to maintain that they do not understand their responsibilities under the order.

Madison and Genefic Pharmacy add that the order is unclear when it says that Madison cannot work for Genefic Pharmacy in Tennessee in the "'therapeutic areas' he represented while employed by" Modern HC Pharmacy, its affiliates, or its successors. R.74 at 2. But surely Madison knows the therapeutic areas *in which he worked* before joining Genefic Pharmacy. Given the extensive proceedings below, Madison's understanding of his own work before joining Genefic Pharmacy, the defendants' possession of the noncompete agreement from the outset, two federal courts' consistent interpretations of it, and the failure of Madison or Genefic Pharmacy to seek any

clarifications below on these points, it is fair to conclude that they fully understand their obligations under it.  If, at any rate, some other ambiguity emerges, they remain free to return to the district court, whose power to "modify a decree of injunctive relief is long-established, broad, and flexible."  *Brown v. Plata*, 563 U.S. 493, 542 (2011) (quotation omitted).

We affirm.