James L. **FERGUSON**, et al.

v.

John F. **JENKINS**.

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

Feb. 6, 2006 Session.

April 28, 2006.

Permission to Appeal Denied by Supreme Court Sept. 25, 2006.

K. Jeff Luethke, Kingsport, Tennessee, for the appellant, Consumers Insurance Company.

Robert J. Jessee, Johnson City, Tennessee, for the appellees, James L. Ferguson and wife, Jamie Ferguson.

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

## OPINION

James L. Ferguson ("the plaintiff")[1] and his wife, Jamie Ferguson, filed suit against John F. Jenkins ("the tortfeasor") to recover damages for personal injuries sustained by the plaintiff when the motorcycle he was operating was struck by the tortfeasor's vehicle. The plaintiff caused process to be served upon Consumers Insurance Company ("Consumers"), on the theory that the policy of automobile insurance issued to him by Consumers afforded him uninsured motorist coverage for the subject accident. Following the plaintiff's settlement with the tortfeasor, Consumers filed a motion for summary judgment, contending that the plaintiff's motorcycle was owned by him for his personal use, and, as such, was not covered by his policy with Consumers, which only covered vehicles owned by, and intended to be resold by, the plaintiff's used vehicle dealership. The trial court denied Consumers' motion, and the case proceeded to trial. At the conclusion of a bench trial, the court held that the plaintiff was entitled to coverage under the uninsured motorist provisions of the Consumers policy. The court determined, *inter alia*, that the motorcycle the plaintiff was driving was a "covered auto" intended for resale. Consumers appeals, arguing that this holding is in error. We affirm.

## I.

The plaintiff is the owner of Jim's 11–E Auto Sales, a used vehicle dealership which he operates as a sole proprietorship. The plaintiff testified that, at his dealership, he had sold—in addition to cars and motorcycles—boats, campers, four-wheelers, dirt bikes, street bikes, pop-up campers, mobile homes, recreational vehicles, farm tractors, and dump trucks.

On May 4, 1999, the plaintiff applied for a "Garage and Dealers" insurance policy with Consumers. The application listed the named insured as "Jim's 11–E Auto Sales[,] Jim Ferguson dba." The application was signed by the plaintiff, but was filled out by the agent for Consumers. The "Garage and Dealers Section" of the application contained a section entitled "Business/Vehicle Storage Information." Within this section, there were spaces to indicate the number and/or percentage of cars, truck-tractors, motorcycles, recreational vehicles, snowmobiles, and "other" vehicles. This section was left entirely blank; the agent filled in no numbers or percentages of any kind. Under "Driver Information," the only driver listed was

---

1. While there are two plaintiffs, the suit of one of them—Jamie Ferguson—is derivative in nature. For ease of reference, we will refer to the injured party—James L. Ferguson—as if he were the sole plaintiff.

the plaintiff. The plaintiff paid an annual premium of $1,275.

Consumers accepted the plaintiff's application and issued Auto Dealers Garage Policy No. 28506889 ("the Policy") on May 5, 1999. The Declarations page of the Policy indicates that the policy covers "Jim Ferguson, Jim's 11E Auto Sales" and lists symbol "22" under the coverage for "Uninsured Motorist," providing coverage of $100,000. The "Garage Coverage Form" portion of the Policy defines symbol "22" as covering "Owned 'Autos' Only," and then further defines "owned autos":

Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins.

In addition, the Garage Coverage Form of the Policy contains the following pertinent provisions:

\* \* \*

**B. Owned Autos You Acquire After The Policy Begins**

1. If Symbol[ ] ... 22, ... [is] entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

\* \* \*

**SECTION VI—DEFINITIONS**

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means a land motor vehicle, "trailer" or semitrailer.

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

\* \* \*

**F.** "Garage operations" means the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. "Garage operations" includes the ownership, maintenance or use of the "autos" indicated in SECTION I of this Coverage Form as covered "autos". "Garage operations" also include all operations necessary or incident to a garage business.

**G.** "Insured" means any person or organization qualifying as an insured in the Who Is an Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

\* \* \*

**P.** "Trailer" includes semitrailer.

\* \* \*

(Capitalization and bold type in original). The Tennessee Uninsured Motorists Coverage form that was included as an endorsement to the Policy recites that it pertains to "a covered 'auto' licensed or principally garaged in, or 'garage operations' conducted in, Tennessee," and that it modifies the insurance provided under the Garage Coverage Form. It contains the following pertinent provisions:

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured", or "property damage" caused by an "accident". The owner's or driver's liability for these damages must result from the owner-

ship, maintenance or use of the "uninsured motor vehicle".

\* \* \*

## B. Who Is An Insured
1. You.

\* \* \*

## C. Exclusions
This insurance does not apply to:

\* \* \*

4. "Bodily injury" sustained by:

a. You while "occupying" ... a vehicle owned by you that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form.

\* \* \*

## F. Additional Definitions
As used in this endorsement:

1. "Property damage" means injury or destruction of:

a. A covered "auto";

\* \* \*

2. The following are added to the **Definitions** Section:

\* \* \*

b. "Occupying" means in, upon, getting in, on, out or off.

c. "Uninsured motor vehicle" means a land motor vehicle or trailer:

\* \* \*

(2) That is an underinsured motor vehicle. An underinsured motor vehicle is a motor vehicle or trailer for which the sum of the limits of liability available for payment to an "insured" under all policies, bonds and securities applicable at the time of the accident, is less than the Limit of insurance for this coverage;

\* \* \*

(Bold type in original). The Policy was renewed in both 2000 and 2001.

On July 8, 2000, the plaintiff purchased a 1976 Harley–Davidson motorcycle ("the motorcycle"), which was in need of extensive repairs. The plaintiff testified that, when he purchased the motorcycle, it was his intention to make the necessary repairs and then resell the motorcycle through his dealership. Two weeks after purchasing the motorcycle, the plaintiff took out a policy of insurance on it through State Farm ("the State Farm policy"). At trial, the plaintiff explained that he took out the State Farm policy "[i]n order to purchase a tag [for the motorcycle]." The plaintiff proceeded to apply for a title and tags for the motorcycle in early August, 2001. The title was issued on October 10, 2001.

Three days later, on October 13, 2001, the plaintiff was seriously injured when, while operating the motorcycle, he was struck by an automobile driven by the tortfeasor. The plaintiff's injuries resulted in medical bills in excess of $150,000.

The plaintiff filed a complaint against the tortfeasor on October 3, 2002, and caused process to be served on Consumers, as the plaintiff's uninsured motorist coverage carrier. Consumers answered the complaint, denying that the Policy afforded any coverage to the plaintiff with respect to the accident. The plaintiff eventually settled his claim against the tortfeasor for the latter's insurance policy limits of $50,000.

Consumers filed a motion for summary judgment on February 23, 2004. In its motion, Consumers contends that the motorcycle was owned by the plaintiff individually for his own personal use, and that, as such, it was not covered by the Policy. On April 12, 2004, the trial court denied Consumers' motion. The case proceeded to trial on September 16, 2004, and at the conclusion of the trial, the court issued its ruling from the bench, finding and holding as follows:

> This is a very interesting case; it's a very interesting question. And, seriously, people, the biggest question in my mind: You look at this application and it's got—according to it, this guy has

zero cars, zero trucks, zero motorcycles, zero RV's, zero snowmobiles. He has an empty lot because they filled in no percentages whatsoever. I mean, that was the agent's job to do that and he didn't do it.

I have no doubt in my mind that this insurance company absolutely does not intend to cover motorcycles. If somebody had filled this in and said, "Two percent motorcycles," or "Two motorcycles on the lot," they would have said, "Huh-uh, we ain't covering you. We'll cover everything else," or "We're not covering you, period."

But what the Court finds the facts to be is this is a commercial insurance application made by this gentleman to cover the business at the 11–E Highway in Jonesborough. He did have a used auto license as far as his business licenses go, but I think we also have to look at what a used auto dealer does in East Tennessee. You can't tell me that you all could go riding around in East Tennessee and not find a used car lot that's got a boat, a motorcycle, a tractor, an RV. What else? Probably a trailer of some sort. They are everywhere. They are out there. And that's what the Court finds is what this business does at the 11–E Highway in Jonesborough.

The nature of the used auto business is to sell mostly cars. And I'll grant there is probably some car lots that that's all they have on them, but a lot of these smaller places do sell other items. It is not illegal to do so. We have an additional potentially-complicating factor in that this is a sole proprietorship. The lines so often blur between a sole proprietorship: What are we doing as Jim Ferguson? What are we doing as 11–E Auto?

Now, [the plaintiff] testified that this motorcycle was purchased for, I think he said, use and sale; and what I heard him saying was he was going to use it while he was waiting for it to sell. He had to get it fixed up first. The testimony was he thought that he had to have State Farm Insurance to get his tags. In the past in this business he had titled some things apparently under the 11–E name and some things under the Jim Ferguson name.

It does appear to this Court that this motorcycle is subject to this uninsured motorist coverage of a hundred thousand ($100,000.00) dollars. The question and answer this gentleman gave in his deposition was somewhat confusing as to whether he really thought that Consumers was going to insure him or not. But the last question that he was asked up there—and I think I asked it—was: "Would you expect them to cover it or not?" And he said, "Well, you would assume that they would."

So, his intention, to me, was that he did assume and did think that he had coverage. It was the insurance company's obligation, when they got this, to look at it and say, "I have no idea what we're insuring. Send his application back and let's get some more facts," if they had any questions whatsoever.

* * *

It seems to me also that it's the insurance companies and the agents who writes [sic] these applications and who write the policies, and if they're not going to cover something, especially if that thing is sitting on the lot—it may not have had a big "for sale" sign on it, but the agent comes in, there's a motorcycle there, it's in—he called it the garage; I don't know if that's like a showroom or whatever, and still he doesn't mention it, doesn't put it down, apparently didn't even ask about it. And the insurance company keeps saying, "Well, you didn't tell us," "you didn't tell us," "you didn't tell us." Well, my sense of

this, there is no obligation for him to give a list of everything on his lot. I heard no testimony that they're required to know every car that comes in that he sells. So, how would this gentleman know to tell them that he's got a boat or a motorcycle to sell? I don't understand that.

So, anyway, that's my ruling. The Court does find for the Plaintiff.

The trial court entered its final judgment on October 27, 2004, incorporating its findings as recited above. From this judgment, Consumers appeals.

## II.

In this non-jury case, our review is *de novo* upon the record of the proceedings below; but the record comes to us with a presumption of correctness as to the trial court's factual determinations that we must honor unless the evidence preponderates otherwise. Tenn. R.App. P. 13(d); *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn.1995); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn.1993). The trial court's conclusions of law, however, are afforded no such presumption. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn.1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn.1993).

Our search for the preponderance of the evidence is tempered by the principle that the trial court is in the best position to assess the credibility of the witnesses; accordingly, such determinations are entitled to great weight on appeal. *Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn.Ct. App.1995); *Bowman v. Bowman*, 836 S.W.2d 563, 566, 567 (Tenn.Ct.App.1991).

## III.

Consumers raises a single issue on appeal: Did the trial court err in finding that the plaintiff was entitled to uninsured motorist coverage under the terms of the Policy? Specifically, Consumers contends

that the motorcycle was owned by the plaintiff *personally,* for his own *personal* use, and that, as such, it was not covered under the Policy. Consumers argues that the State Farm policy is the only policy covering the motorcycle. We disagree with this contention, as did the trial court.

In interpreting contracts of insurance, we must, as a general rule, apply the same rules of construction as are applicable to other types of contracts. *See McKimm v. Bell,* 790 S.W.2d 526, 527 (Tenn.1990). Such contracts are to be interpreted as they are written—absent any fraud or mistake—and their terms must be given their plain and ordinary meaning. *Swanson v. Mid-South Title Ins. Corp.,* 692 S.W.2d 415, 419 (Tenn.Ct.App.1984). The interpretation of a contract presents a question of law for the court. *Union Planters Corp. v. Harwell,* 578 S.W.2d 87, 92 (Tenn.Ct.App.1978).

To determine whether the Policy provides coverage for the plaintiff's October 13, 2001, accident, we must closely examine the language of the Policy. First, it is undisputed that the Policy was in effect at the time of the plaintiff's accident. Second, the policy was issued to "Jim Ferguson, Jim's 11–E Auto Sales." Consumers makes much of the fact that the plaintiff purchased and titled the motorcycle in his own name, as opposed to the name of the dealership. This, Consumers asserts, is evidence that the motorcycle was intended for personal, rather than business, use. We believe this argument misses the point. The plaintiff operates the dealership as a sole proprietorship. As this court has stated, "a sole proprietorship is nothing more than an individual conducting a business for profit, which in turn becomes his income." *Koch v. Koch,* 874 S.W.2d 571, 576 (Tenn.Ct.App.1993). Regardless of whether the plaintiff purchased a vehicle in the name of "Jim Ferguson" or in the

name of "Jim's 11–E Auto Sales," that vehicle is owned by the plaintiff; "Jim Ferguson" and "Jim's 11–E Auto Sales" are one and the same. Thus, the fact that the motorcycle was purchased and titled in the name of "Jim Ferguson" does not necessarily mean that the motorcycle was not covered under the Policy. However, even though the Policy covered Jim Ferguson and the motorcycle was owned by him and titled in his name, this does not end our inquiry. We must determine whether the plaintiff's ownership of the motorcycle was of such a nature to be covered by the Policy.

Turning to the language of the Policy itself, symbol "22" provides uninsured motorist coverage for "those 'autos' you own," including "those 'autos' you acquire ownership of after the policy begins." The motorcycle was acquired by the plaintiff after taking out the Policy. Hence, it is covered, provided it meets all other requirements of the Policy and is not otherwise excluded under its terms.

■ Consumers called as a witness one of its representatives, who testified that Consumers does not insure motorcycles. However, unless there is some ambiguity in the policy as to whether the Policy covers motorcycles, this testimony is not material: "[I]n matters of unambiguous written instruments absent proof of fraud, misrepresentation, undue influence and situations of like character, the unspoken subjective intent of a party is not relevant." *Malone & Hyde Food Servs. v. Parson,* 642 S.W.2d 157, 159 (Tenn.Ct.App. 1982).

■ The definitions section of the Policy defines an "auto" as "a land motor vehicle, 'trailer' or semitrailer." As a motorcycle certainly cannot be considered a trailer or semitrailer, the only applicable portion of the definition is "land motor vehicle." Since "land motor vehicle" is not defined in the Policy, we must give those words their "usual, natural and ordinary meaning." *See Swanson,* 692 S.W.2d at 419. To aid us in this task, we turn to the dictionary. *See Am. Justice Ins. Reciprocal v. Hutchison,* 15 S.W.3d 811, 815 (Tenn.2000); *Tata v. Nichols,* 848 S.W.2d 649, 653 (Tenn. 1993). "Land" is defined as "[t]he solid ground of the earth." *The American Heritage College Dictionary* 761 (3rd ed.2000). The term "motor vehicle" is defined as "[a] self-propelled wheeled conveyance, such as a car or truck, that does not run on rails." *Id.* at 891. "Motorcycle" is defined as "[a] two-wheeled *motor vehicle* resembling a heavy bicycle." *Id.* (emphasis added). Thus, as applied to the language of the Policy, a "land motor vehicle" would include a motorcycle, as it is certainly a "self-propelled wheeled conveyance . . . that does not run on rails" and is operated on the "solid ground of the earth." If Consumers had wished to exclude coverage for motorcycles, it could have and should have clearly so provided in the Policy. It did not. Under the unambiguous language of the Policy, a motorcycle is a covered auto. Hence, the subject motorcycle is a "covered auto."

■ Our inquiry does not end there, however. The Uninsured Motorists Coverage portion of the Policy pertains to covered autos "licensed or principally garaged in, or 'garage operations' conducted in, Tennessee." In other words, if the covered auto is for personal use, rather than for resale as part of the plaintiff's garage operations, the uninsured motorist coverage is not applicable. To support its contention that the motorcycle was purchased for the personal use of the plaintiff, Consumers relies on the following facts: the motorcycle was purchased and titled in the plaintiff's name rather than the name of his business; the address listed on the title is the plaintiff's home address; and the plaintiff took out a personal insurance policy on the motorcycle through State Farm. Consumers argues that this evi-

dence, when taken together, proves that the vehicle was intended for the plaintiff's personal use. We disagree with this contention. The fact that the motorcycle is titled in the plaintiff's name, rather than in his name dba or in his trade name by itself, does nothing to prove its intended use. We have already held that, because the business is operated as a sole proprietorship, Jim Ferguson and "Jim's 11–E Auto Sales" are one and the same. Accordingly, the fact that the motorcycle is titled in his name is not conclusive evidence of ownership for personal use. The same can be said for the fact that the plaintiff listed his home address on the title. Moreover, the fact that the plaintiff was driving the motorcycle is insufficient to prove that it was intended for personal use. It is certainly not uncommon for automobile dealers to drive vehicles from their lot before they are sold.

With respect to the State Farm policy, the plaintiff testified—and the trial court believed—that the plaintiff thought he had to have the State Farm policy in order to purchase tags for the motorcycle. The trial court also found that the plaintiff purchased the motorcycle with the intent to resell it and that the plaintiff "assumed" the motorcycle was covered under the Policy. Issues of witness credibility are primarily within the province of the trial court, *see Massengale*, 915 S.W.2d at 819; *Bowman*, 836 S.W.2d at 566, 567, and giving, as we must, such determinations their proper deference on appeal, we cannot say that the evidence preponderates against the trial court's finding that the plaintiff purchased the motorcycle to be resold through his used vehicle dealership.

■ Since we have determined that the motorcycle was a covered auto, as contemplated under the Policy, and that it was intended for resale, thus subjecting it to coverage under the Auto Dealers Garage Policy, the plaintiff is entitled to uninsured motorist coverage if his damages resulted from bodily injury sustained by him as the result of an accident with an "uninsured motor vehicle." Without question, the plaintiff suffered bodily injury as a result of his accident with the tortfeasor. An "uninsured motor vehicle" includes an "underinsured motor vehicle," which is defined as "a motor vehicle ... for which the sum of the limits of liability available for payment to an 'insured' under all policies ... applicable at the time of the accident, is less than the Limit of insurance for this coverage." Because the tortfeasor's insurance policy limits were less than the plaintiff's limits under the uninsured motorist coverage section of the Policy, the tortfeasor's vehicle qualifies as an uninsured motor vehicle. There are no applicable exclusions in the Policy. Thus, the trial court correctly held that the Policy was applicable and that the plaintiff was entitled to coverage of $50,000 under the Policy,[2] which amount represents the difference between the limits of the Policy and the amount the plaintiff received in settlement with the tortfeasor.

■ Consumers refers to Tenn.Code Ann. § 56–7–1201(b)(2) (2000)[3] and argues that this statute

---

**2.** The State Farm limits were $50,000. Thus, the plaintiff was not uninsured or underinsured as to that policy.

**3.** Tenn.Code Ann. § 56–7–1201(b)(2) provides as follows:

With respect to bodily injury to an insured while occupying a motor vehicle owned by such insured, only the limits of uninsured motorist coverage on the vehicle in which the insured was an occupant shall apply. The limits of uninsured motorist coverage shall not be increased because of multiple motor vehicles whether covered under a single policy or multiple policies, and in no event shall the total amount of recovery from all policies and bonds, including any amount recovered under the insured's unin-

limits the owner of vehicles in these situations from searching around to various policies for additional insurance and prevents the situation, as we have here, where the insured may purchase a business policy with large limits and rely upon those limits to cover minimum policy limits on all other vehicles owned for personal use.

Consumers misconstrues this statute. This statute applies to a situation where the owner of multiple vehicles is attempting to *increase* the stated limits of coverage. In the instant case, the plaintiff is not attempting to increase the limits of uninsured motorist coverage under the Policy. The statute simply has no application to the facts of this case.

### IV.

■ The plaintiff has filed a motion to consider post-judgment facts pertaining to Consumers' policy of providing coverage for motorcycles. The facts which the motion seeks to raise are not of the type that we can consider under Tenn. R.App. P. 14(a). Therefore, the plaintiff's motion is hereby denied.

### V.

The judgment of the law court is affirmed. This case is remanded to the law court for enforcement of that court's judgment and for the collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed to the appellant, Consumers Insurance Company.

sured motorist coverage, exceed the limits of the insured's uninsured motorist coverage.