IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 28, 2007 Session

## DONALD F. BRADFORD, ET AL. v. JAMES W. SELL, ET AL.

**Appeal from the Circuit Court for Washington County (Johnson City Law Court)**
**No. 25079      Jean A. Stanley, Judge**

_____

**No. E2006-02272-COA-R3-CV - FILED APRIL 17, 2007**

_____

The issue presented in this lease dispute is whether the landlord or the tenant is responsible for payment of the costs of ad valorem real estate taxes and premiums for fire and extended coverage insurance.  We hold that pursuant to the clear and unambiguous agreement of the parties, the tenant is responsible for the costs at issue. We therefore reverse the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Reversed;**
**Case Remanded**

SHARON G. LEE, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and D. MICHAEL SWINEY, JJ., joined.

Edward T. Brading, Johnson City, Tennessee, for the Appellants, James W. Sell and Carolyn R. Sell.

Rick J. Bearfield, Johnson City, Tennessee, for the Appellees, Donald F. Bradford and Wendy L. Bradford.

**OPINION**

_I. Background_

James W. Sell and Carolyn R. Sell own a parcel of commercial real property improved with a large supermarket-type building on Knob Creek Road in Johnson City, Tennessee.  The Sells bought this property subject to a lease (the "overlease") with Winn-Dixie Charlotte, Inc. ("Winn-Dixie").  The term of the overlease was twenty years, ending on August 6, 2017.  The overlease required Winn-Dixie to pay rent in several variously defined forms: (1) "minimum guaranteed" rent in the amount of $468,676 per year, due and payable in monthly installments of $39,056.33; (2) "excess" rent in the amount, if any, by which one percent of Winn-Dixie's gross annual sales exceeded the minimum guaranteed annual rent;  (3) "additional" rent in the amount of the fire and extended coverage insurance policy purchased by the Sells to insure the property; and (4) "additional" rent in the amount of ad valorem real estate taxes levied against the leased property.

Although Winn-Dixie abandoned the property around 2000, it continued to pay rent to the Sells as required by the overlease. By agreement dated October 1, 2004, Winn-Dixie subleased the property to Donald F. Bradford and Wendy L. Bradford. The sublease provided that the Bradfords pay monthly "base rent" in the amount of $16,000 through December 31, 2005 and $32,000 thereafter, and also "additional rent" of gross annual sales percentage or "excess" rent as set forth in the overlease. The sublease further provided that Winn-Dixie remained responsible for paying rent to the Sells in the amount of the ad valorem real estate taxes and fire and extended coverage insurance premiums, stating that "[n]othing contained in the Sublease shall be construed to require [Bradfords] to pay any portion of the [Sells'] fire and extended coverage insurance as set forth in [the overlease], and...ad valorem real estate taxes as set forth in [the overlease].

Before Mr. Bradford signed the sublease with Winn-Dixie, he approached and negotiated an agreement with the Sells, in order to ensure that the Sells would continue to rent to him in the event that the overlease was terminated. After negotiation, the Sells and the Bradfords executed a Recognition Non-Disturbance Agreement (the "RNDA") on September 28, 2004. The RNDA contains the following provision, the interpretation of which is the crux of the issue before the court:

> The Owner [Sell] agrees with Sublessee [Bradford] that in the event that, for any reason whatsoever, the Overlease shall be terminated or come to an end during the term of the Sublease, and [Winn-Dixie's] rights under the Overlease and under the Sublease have terminated and are no longer of any force and effect, (a) the [Sells] and [Bradfords] shall enter into a substitute lease (the "Substitute Lease") *which shall contain the same terms and conditions as the Overlease, except that [Bradfords'] monthly rent obligations under the Substitute Lease shall be the same as the [Bradfords'] monthly rent obligations under the Sublease...*

(Emphasis added).

Winn-Dixie filed for Chapter 11 bankruptcy on February 21, 2005. On December 8, 2005, the federal bankruptcy court granted Winn-Dixie's motion to reject the overlease with the Sells and the sublease with the Bradfords. Shortly thereafter, this dispute arose between the Sells and Bradfords over who was responsible for paying for the ad valorem real estate taxes and insurance premiums for the fire and extended coverage. Each party proposed and offered a substitute lease that required the other to pay the tax and insurance items in dispute. The parties stipulated that the taxes and insurance at issue represented an expense of nearly $73,000 per year.

The Bradfords filed this action for declaratory judgment that the RNDA, the overlease, and the sublease required the Sells to pay for the disputed taxes and insurance. The Sells answered and counterclaimed. Each party requested that the trial court require them to enter into the replacement lease proposed by that party. The Sells filed a motion in limine to exclude parol evidence, arguing that the terms of the controlling documents were clear and unambiguous. The trial court took the

motion in limine under advisement and did not explicitly rule on it, but the trial court heard proof, including the testimony of various witnesses, at a hearing on September 22, 2006.

The trial court entered its order on September 28, 2006, holding that the RNDA "is clear on its face." The trial court stated that the question presented is what Bradford's "monthly rent obligations" are under the sublease, and further stated as follows:

> The term "monthly rent" appears nowhere in either the Overlease or the Sublease. Therefore, use of this term in the RNDA is something new. The rental obligations contained in the Overlease are all annual obligations yet regardless of when they are due, each is referred to as "additional rental." (This includes the annual rent, excess rent, fire insurance, and taxes.) Therefore, the Court must conclude that the total of the annual rent, excess rent, fire and extended insurance, and the taxes are the "rent" agreed to between Winn-Dixie and Sell. It is clear from the RNDA that the rent which Bradford agrees to pay to Sell will be the same as Bradford's rent to Winn-Dixie. The rent to Winn-Dixie clearly appears to be base rent and the additional rent per Exhibit A and clearly does not include fire and extended coverage and ad valorem real estate taxes.

The trial court ordered the parties to enter into the substitute lease agreement proposed by the Bradfords.

## II. Issues Presented

The Sells appeal, raising the following issues:

1. Whether the trial court erred in admitting parol evidence at the hearing to contradict, vary, or alter the terms of the overlease, RNDA, and sublease.

2. Whether the trial court erred in directing that the parties enter into the proposed substitute lease submitted by the Bradfords, thereby making the Sells responsible for paying the tax and insurance costs at issue.

## III. Standard of Review

In a non-jury case such as this one, we review the record de novo with a presumption of correctness as to the trial court's determination of facts, and we must honor those findings unless the evidence preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law are accorded no presumption of correctness. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn. 1993). "The interpretation of written agreements, like the

lease at issue, is a matter of law that this Court reviews de novo on the record according no presumption of correctness to the trial court's conclusions of law." *Allstate Ins. Co. v. Watson,* 195 S.W.3d 609, 611 (Tenn. 2006).

## *IV. Analysis*

### *A. Parol Evidence*

As noted, the Sells moved in limine to exclude parol evidence, arguing that the controlling documents were clear and unambiguous. The initial question for the trial court to determine, therefore, was whether the language at issue contained in the RNDA, overlease, and sublease was ambiguous. In *Watson,* the Supreme Court provided the following guidance for the interpretation of written agreements:

> A cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties. *Christenberry v. Tipton,* 160 S.W.3d 487, 494 (Tenn.2005). In interpreting contractual language, courts look to the plain meaning of the words in the document to ascertain the parties' intent. *Planters Gin Co. v. Fed. Compress & Warehouse Co.,* 78 S.W.3d 885, 889-90 (Tenn.2002). This Court's initial task in construing the lease at issue is to determine whether the language is ambiguous. *Id.* at 890. If the language is clear and unambiguous, the literal meaning controls the outcome of the dispute. *Id.* If, however, the words in a contract are susceptible to more than one reasonable interpretation, the parties' intent cannot be determined by a literal interpretation of the language. *Id.*
>
> Contractual language "is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one." *Farmers-Peoples Bank v. Clemmer,* 519 S.W.2d 801, 805 (Tenn.1975).

*Watson,* 195 S.W.3d at 611.

The parol evidence rule provides that parol evidence "is inadmissible to contradict, vary, or alter a written contract where the written instrument is valid, complete, and unambiguous, absent fraud or mistake or any claim or allegation thereof." *Airline Const. Inc. v. Barr,* 807 S.W.2d 247, 259 (Tenn. Ct. App. 1990); 32A C.J.S. *Evidence* § 851 at 213 (1974); Tenn. Code Ann. § 47-2-202; *see Littlejohn v. Fowler*, 45 Tenn. (Coldwell) 284 (1867); *Marron v. Scarbrough*, 314 S.W.2d 165 (Tenn. Ct. App. 1958).

In the instant case, both the Sells and the Bradfords argue that the contractual language at issue is clear and unambiguous, and that it plainly supports their position. Although the trial court

did not rule on the motion in limine before the hearing, at which five witnesses testified and numerous extrinsic documents were admitted into evidence, the trial court stated in its order reflecting its final judgment that "[b]efore considering any extrinsic evidence, the Court must decide whether the terms of the RNDA are plain and unambiguous on their face." Then, after analyzing the terms and conditions of the contracts, the trial court held that "the [RNDA] is clear on its face." The trial court made no reference in its order to any extrinsic evidence presented, nor did it make any findings of fact beyond its citations to the contractual provisions at issue. Thus, there is no indication in the record that the trial court considered the parol evidence presented at the hearing in deciding the case.

## B. Interpretation of Contract

We now turn to a close examination of the pertinent contractual agreements. The critical language of the RNDA is the parties' agreement that in the event the overlease is terminated, they "shall enter into a substitute lease...which shall contain the same terms and conditions as the Overlease, except that [the Bradfords'] monthly rent obligations under the Substitute Lease shall be the same as the [Bradfords'] monthly rent obligations under the Sublease... ." As the trial court correctly noted, this language raises the question of what comprises the Bradfords' "monthly rent obligations" under the sublease.

In reading this language and giving each word and phrase its usual and ordinary meaning, we are of the opinion that the use of the word "monthly" to qualify the term "rent" is significant. The parties could have, but did not, state that *all* of the Bradfords' rent obligations would be the same in the substitute lease as they were in the sublease. The plain language of the RNDA indicates that they agreed that only the "monthly" rent obligations would be as provided in the sublease, and that all the other terms and conditions of the substitute lease, including rent obligations that cannot be reasonably construed as "monthly," would be the same as in the overlease between the Sells and Winn-Dixie. We do not find the word "monthly" to be ambiguous; it is not susceptible to more than one reasonable interpretation. Webster's Ninth New Collegiate Dictionary (1986) defines "monthly" as "once a month; by the month; of or relating to a month; payable or reckoned by the month; lasting a month; occurring or appearing every month."

The sublease provides in pertinent part as follows:

> RENT. [Bradford] shall pay rent...as follows:
>
> > (i) Base Rent. Base Rent shall be paid *in equal monthly installments* and shall be due and payable in advance on the first day of each month and every calendar month of the Sublease Term...[the Bradfords] shall pay to [Winn-Dixie] minimum guaranteed rent ("Base Rent") for the Premises as follows:

i. $16,000 *per month* from the Effective Date through December 31, 2005; and;

ii. $32,000 *per month* from January 1, 2006 through the balance of the Sublease Term.

(ii) <u>Additional Rent</u>.  In addition, [Winn-Dixie] and [the Bradfords] shall pay additional rent ("Additional Rent") in the amount and at the times provided on Exhibit A attached hereto and made a part hereof...Base Rent and Additional Rent are herein collectively referred to as the "Rent."

<u>EXHIBIT A</u>

Additional Rent

[BRADFORDS'] ADDITIONAL  RENT OBLIGATIONS.

[The Bradfords] shall pay percentage rent as set forth in Paragraph 1, <u>Rental</u>, of the [overlease].

\*                    \*                    \*

[WINN-DIXIE'S] ADDITIONAL RENT OBLIGATIONS.

[Winn-Dixie] shall pay to [the Sells], when due, [Winn-Dixie's] costs of [the Sells'] fire and extended coverage insurance as set forth in Paragraph 13, <u>Fire</u>, of the [overlease], and [Winn-Dixie's] share of ad valorem real estate taxes as set forth in Paragraph 32, <u>Real Estate Taxes</u>, of the [overlease].  Nothing contained in the Sublease shall be construed to require [the Bradfords] to pay any portion of the [Sells'] fire and extended coverage insurance...and [Winn-Dixie's] share of ad valorem real estate taxes[.]

[Italics added; numbering omitted].  It is clear from the above that the only "monthly" rent obligation provided in the sublease is the $16,000 per month through December 31, 2005 and the $32,000 per month thereafter.  The Bradfords cite and rely upon the final sentence in the sublease quoted above; but by the parties' RNDA agreement, the only significant provisions of the sublease, as regards the creation of a substitute lease, are those that set forth the Bradfords' "monthly rent obligations." Because the provision stating that nothing shall be construed in the sublease to require the Bradfords to pay ad valorem taxes and fire and extended coverage insurance premiums does not pertain to a monthly rent obligation, it is irrelevant to the issue of the parties' obligations under the substitute lease.  By their agreement, the terms and conditions of the overlease control that issue.

As per the parties' agreement under the RNDA, we turn to the overlease to determine the terms and obligations other than the Bradfords' "monthly rent obligations under the sublease."  The

overlease clearly provides that the tenant is responsible for additional rent in the amount of the fire and extended coverage insurance premiums and ad valorem real estate taxes:

> During the term of this Lease and any extensions, Tenant agrees to pay to Landlord as additional rental the amount of the premium for Landlord's fire and extended coverage insurance above described attributable to the demised premises.
>
> \*             \*             \*
>
> During the term of this Lease and any extensions thereof, Tenant agrees to pay to Landlord as additional rental the amount of ad valorem real estate taxes levied against the demised premises.

The language at issue here is clear and unambiguous, and therefore "it is the function of [the] court to interpret and enforce contracts as they are written, notwithstanding they may contain terms which may be thought harsh and unjust. A court is not at liberty to make a new contract for parties who have spoken for themselves." *Petty v. Sloan,* 277 S.W.2d 355, 359 (Tenn. 1955); *Boyd v. Comdata Network, Inc.* 88 S.W.3d 203, 223 (Tenn. Ct. App. 2002) ("a court's role is to enforce an unambiguous contract as it is written unless the contract is being challenged based on fraud or mistake").[1]

We are of the opinion that to require the parties to enter into the Bradfords' proposed substitute lease agreement would effectively be to elide the word "monthly" from the "monthly rent obligation under the sublease" provision of the RNDA agreement. "The courts, of course, are precluded from creating a new contract for the parties." *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc*. 521 S.W.2d 578, 580 (Tenn. 1975).

The Sells' proposed substitute lease agreement contains terms and conditions identical to the pertinent sections of the overlease, except for requiring the Bradfords to pay $32,000 per month in rent instead of the $39,056.33 per month the Sells were receiving from Winn-Dixie. This proposed substitute lease, we believe, reflects the RNDA agreement of the parties as negotiated, memorialized in writing, and signed by the parties.

### *V. Conclusion*

For the aforementioned reasons, the judgment of the trial court is reversed, and the case remanded with instructions for the trial court to enter judgment requiring the parties to enter into the

---

[1]As regards an "allegation of fraud or mistake," the Bradfords alleged fraud in the inducement of the RNDA and promissory estoppel in their complaint. However, they did not seriously pursue these allegations at trial, and do not assert them on appeal. Their brief admits that "the trial court's order in this case was not based on fraudulent inducement or promissory estoppel." We note that in any event, nothing in the Bradfords' proof regarding the circumstances surrounding the parties' negotiations prior to executing the RNDA supports an allegation of fraudulent inducement or promissory estoppel.

Sells' proposed substitute lease agreement as required by the clear and unambiguous language of the RNDA.  Costs on appeal are assessed to the Appellees, Donald F. Bradford and Wendy L. Bradford.


_____
SHARON G. LEE, JUDGE