IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 10, 2012 Session

## MITZI BAYNE RUTH, executrix of the Estate of FRED W. BAYNE, et al., v. HOME HEALTH CARE OF MIDDLE TENNESSEE, LLC, et al.

Appeal from the Chancery Court for Bradley County
No. 07-284     Hon. Jerri S. Bryant, Chancellor

No. E2011-02681-COA-R3-CV-FILED-OCTOBER 1, 2012

This action was appealed before to this Court and this appeal follows our remand back to the Trial Court for determination of the ambiguous terms found in the contract between the parties. Upon remand, the Trial Court conducted an evidentiary hearing and made a finding as to what the parties intended as to the terms of the contract previously found ambiguous. On appeal, we affirm the Judgment of the Trial Court's determination of what the document provided and determined the rights of the parties, and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, J., and JOHN W. MCCLARTY, J., joined.

Robert R. Stone, Knoxville, Tennessee, for the appellants, Home Health Care of Middle Tennessee, LLC and B. Fred Allred, III.

C. Crews Townsend and Thomas E. Hayes, Chattanooga, Tennessee, for the appellees, Mitzi Bayne Ruth, executrix for the Estate of Fred W. Bayne, the Estate of Fred W. Bayne, and Home Health Care of East Tennessee, Inc.

## OPINION

## Background

This appeal involves the interpretation of a written operating agreement of a limited liability company. The dispute arose after the death of Fred W. Bayne (Bayne), who was an equal partner with defendant B. Fred Allred, III (Allred) in a home-health care business known as Home Health Care of Middle Tennessee (HHC-MT, the Company or the LLC). Bayne and Allred had been equal partners in another home-health care venture, Home Health Care of Western Tennessee (HHC-WT). Both business entities were operated as separate Tennessee limited liability companies and the partners had executed separate written Operating Agreements for each company.

Following the death of Bayne in February 2007, Bayne's daughter Mitzi Bayne Ruth, as the executrix of the estate of Fred W. Bayne (Executrix), the estate of Fred W. Bayne (the Estate)and Home Health Care of East Tennessee, Inc. (HHC-ET)[1] filed suit against HHC-MT and Allred. The complaint sought, among other things a declaratory judgment that Bayne's death was an event triggering dissolution of HHC-MT. The complaint also alleged that Allred had attempted to tender to the Estate $182,462 for an assignment of Bayne's membership interest in HHC-MT, had continued operating HHC-MT after Bayne's death, had refused to repay loans Bayne and HHC-ET made to HHC-MT and refused to reimburse HHC-ET for services rendered by Bayne and HHC-ET while Bayne was alive.

Both plaintiffs and defendants moved for partial summary judgment, and the Trial Court entered an order granting plaintiffs' motion for partial summary judgment holding that Fred W. Bayne's death was a liquidating event triggering the dissolution of HHC-MT pursuant to the Company's Operating Agreement, and that Allred did not have the right pursuant to the Operating Agreement to purchase Bayne's membership interest and continue the business. The Trial Court ordered Allred to dissolve the Company pursuant to the Tennessee Limited Liability Company Act, Tenn. Code Ann. § 48-201-101, *et seq*. and to render an accounting to the estate for the operations of the Company since February 9, 2007, the date of Bayne's death. The Company and Allred were further ordered to pay the estate its share of any profits or distributions received that were not equally shared with the estate. Defendants' motion for summary judgment was denied.

The remaining issues in the suit were heard, but prior to the hearing, the parties reached an agreement as to the amounts HHC-MT owed to the Bayne Estate and HHC-ET for loans made during the life of Bayne. The sole issue remaining for the Trial Court's

---

[1] Allred was not a member of HHC-ET.

determination was whether HHC-MT owed HHC-ET for services rendered prior to Bayne's death and if it did, the amount owed. The Trial Court held that HHC-MT owed HHC-ET $433,570.61 for services received.

The Company and Allred appealed the Trial Court's granting of plaintiffs' motion for partial summary judgment to this Court.

## The Appeal

This Court, in *Ruth v. Home Health Care of Middle Tennessee, LLC*, E2009-00845-COA-R3-CV, 2010 WL 744936 (Tenn. Ct. App. Mar. 3, 2010), held that the parts of the Operating Agreement the Trial Court relied on to find Bayne's death was a liquidating event triggering the dissolution of HHC-MT and that Allred did not have the right pursuant to the agreement to purchase Bayne's membership interest and continue the Company business were ambiguous. This Court explained that it found the Operating Agreement "particularly ambiguous" in that it requires a vote by **Majority Interest** to overcome a dissolution and **Majority Interest** is defined in terms of **Membership Interests** of **Members** in relation to **Capital Interests**, which are in turn defined with reference to **Capital Accounts**. The Court described these definitions in the Operating Agreement as "convoluted, inextricably intertwined, and subject to fairly being understood in more than one way." *Ruth* at *5 (emphasis added). This Court concluded:

> Given that the Operating Agreement is ambiguous, the ultimate issue in this case, which is what was the intent of the parties to the Operating Agreement, becomes a disputed factual issue. Therefore, summary judgment was not proper on the issue of whether Allred had the right to purchase Fred W. Bayne's membership interest pursuant to [] [the Operating Agreement] thereby stopping the dissolution triggered by the death of Fred W. Bayne.

*Id.*

The Court vacated the grant of partial summary judgment to plaintiffs and remanded the case to the Trial Court for further proceedings in order to determine the intent of the parties to the ambiguous Operating Agreement, and whether a dissolution of the Company is required pursuant to the Operating Agreement. *Id*. at * 6.

## Trial on Remand

After remand, the Trial Court heard evidence to determine the intent of the parties who executed the Operating Agreement regarding dissolution of the Company. In its Order

entered, the Court found that, as to the ambiguous dissolution provision in the Operating Agreement, there was no direct proof of Allred's intent. It did find, however, "indices of Bayne's intent . . . ." A summary of the Court's findings of fact is:

1. Bayne did not want HHC-MT to pass to Allred after his death.
2. Bayne made loans to HHC-MT. Bayne would be unlikely to continue to loan money to HHC-MT if his death would cause him to cease holding 50 percent of the company.
3. Bayne and Allred were partners for a short time in a West Tennessee company (HHC-WT) for which there was an Operating Agreement. That Operating Agreement provided a method for surviving members to purchase a deceased member's interest for fair market value.
4. Bayne and Allred had equal capital accounts. Further, from 2001 to 2007, the capital accounts for Bayne and Allred always remained 50/50, whether the company showed a profit or a loss.

The Trial Court concluded that the above summarized evidence showed that Bayne and Allred intended to keep their interest at 50% each and to part ways upon a member's death. The Court also found the evidence also showed that the parties intended that neither party would ever hold a majority interest, thus Allred did not hold the "majority interest" required under the Operating Agreement to purchase Bayne's membership interest and to continue to operate the Company. Based on these findings of fact as to the intent of the parties, the Trial Court held that the Operating Agreement requires that HHC-MT must be dissolved. The Court retained continuing jurisdiction to supervise the dissolution of the Company and ordered the defendants to render an accounting of the operations of the Company from February 9, 2007 forward and the Court stated that, if needed, it would conduct a second trial to address any issues that arise from the accounting. Although this judgment was not final, the Trial Court granted the parties permission "to seek an interlocutory appeal with respect to the Court's order regarding dissolution . . . and the Court's findings of fact and conclusions of law regarding the parties intent under the Operating Agreement with respect to dissolution.

Defendants HHC-MT and Allred filed the appeal. The issues on appeal are:

A. Whether the Trial Court erred by construing majority interest" as defined in the operating agreement of HHC-MT to mean 51% of capital held by both members and non-members of the LLC?

B. Was the Trial Court's decision that the parties intended HHC-MT to dissolve upon a member's death supported by the evidence and the language of the

-4-

operating agreement?

C.  Whether the Trial Court erred in holding that consent to avoid dissolution of a Tennessee limited liability company formed after July 1, 1999 was not allowed by Tenn. Code Ann. § 48-245-101(b)(2010) because the company's operating agreement addressed the matter?

D.  Whether the Trial Court abused its discretion by refusing to admit the testimony of the draftsman of the operating agreement as to a typographical error and his intent when drafting a provision for the purchase of a deceased member's interest in the company?

(1)  if the Trial Court did abuse its discretion on this issue, would the excluded testimony have made a difference in the outcome of the case?

A trial court's evidentiary rulings are reviewed for an abuse of discretion only. *White v. Vanderbilt Univ.,* 21 S. W. 3d 215, 222 (Tenn. Ct. App. 1999). A trial court's factual findings are reviewed by this Court *de novo* with a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d): *Cross v. City of Memphis*, 20 S. W. 3d 642, 644 (Tenn. 2000). The trial court's conclusions of law are reviewed under a purely *de novo* standard with no presumption of correctness. *Taylor v. Fezell,* 158 S.W.3d 352, 357 (Tenn. 2005)*, Union Carbide Corp. v. Huddleston* 854 S.W.2d 87, 91 (Tenn. 1993).

The first issue on appeal, although stated somewhat differently by appellant, is whether the Trial Court was correct when it found there was sufficient evidence to show that Bayne intended HHC-MT to dissolve upon a 50/50 member's death and that there was no evidence of Allred's intent.

This Court's earlier ruling that the terms of Section 12.1(e) of the Operating Agreement were ambiguous is the law of the case. The law of the case doctrine in Tennessee has been clearly established:

[U]nder the law of the case doctrine, an appellate court's decision on an issue of law is binding in later trials and appeals of the same case if the facts on the second trial or appeal are substantially the same as the facts in the first trial or appeal. The doctrine applies to issues that were actually before the appellate court in the first appeal and to issues that were necessarily decided by implication. The doctrine does not apply to dicta.

*Creech v. Addington*, 281 S.W.3d 363, 383 (Tenn. 2009)(citing *Memphis Publ'g Co. v. Tenn. Petroleum Underground Storage Tank Bd.,* 975 S.W.2d 303, 306 (Tenn.1998)). The exceptions to the law of the case doctrine are limited and a reconsideration of an issue is permitted only if: (1) the evidence produced on remand is substantially different than the evidence produced at the initial proceeding; (2) the earlier findings of law are "clearly erroneous and would result in manifest injustice if allowed to stand"; (3) the prior ruling is "contrary to a change in controlling law that occurred between the first and second appeal." *Memphis Publ'g Co.* at 306. We hold that none of these exceptions are applicable here, thus, we are bound to follow the holding in *Ruth,* 2010 WL 744936 at * 5, that the specified terms of Section 12.1(e) of the Operating Agreement are so ambiguous the section's meaning cannot be discerned by its language alone, as the law of the case.

Although both appellants and appellees acknowledge in their briefs that the Court of Appeals held that the critical terms in Section 12.1(e) are so ambiguous as to render that section's meaning indiscernible, both parties ignore that the holding is the law of the case. Instead, they each argue that this Court should interpret the section as written. The Trial Court, did follow the law of the case and instead of attempting to construe Section 12.1(e) as written, correctly looked to parole evidence presented at trial to ascertain what the parties intended as to dissolution of the LLC upon death of one partner and the setting aside of the dissolution by the remaining partner.

This Court set out the well settled rules of contract interpretation in *Kafozi v. Windward Cove, LLC,* 184 S.W.3d 693 (Tenn. Ct. App. 2005)(appeal denied Jan. 30, 2006) as follows:

> In resolving a dispute concerning contract interpretation, our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contract language. *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.,* 78 S.W.3d 885, 889–90 (Tenn.2002)(citing *Guiliano v. Cleo, Inc.,* 995 S.W.2d 88, 95 (Tenn.1999)). A determination of the intention of the parties "is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide." *Planters Gin Co.,* 78 S.W.3d at 890 (citing 5 Joseph M. Perillo, *Corbin on Contracts,* § 24.30 (rev. ed.1998); *Doe v. HCA Health Servs. of Tenn., Inc.,* 46 S.W.3d 191, 196 (Tenn.2001)). The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern. *Planters Gin Co.,* 78 S.W.3d at 890. The parties' intent is presumed to be that specifically expressed in the body of the contract. "In other words, the object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used and to give effect to such intent if it does not

conflict with any rule of law, good morals, or public policy." *Id.* (quoting 17 Am.Jur.2d, *Contracts,* § 245).

This Court's initial task in construing the Contract at issue is to determine whether the language of the contract is ambiguous. *Planters Gin Co.,* 78 S.W.3d at 890. If the language is clear and unambiguous, the literal meaning of the language controls the outcome of the dispute. *Id.* A contract is ambiguous only when its meaning is uncertain and may *fairly* be understood in more than one way. *Id.* (emphasis added). If the contract is found to be ambiguous, we then apply established rules of construction to determine the intent of the parties. *Id.* Only if ambiguity remains after applying the pertinent rules of construction does the legal meaning of the contract become a question of fact. *Id.*

*Kafozi*, at 698-99.

An ambiguous provision in a contract generally will be construed against the party drafting it. *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 612 (Tenn. 2006)(citing *Hanover Ins. Co. v. Haney,* 221 Tenn. 148, 425 S.W.2d 590, 592 (1968); *Vargo v. Lincoln Brass Works, Inc.,* 115 S.W.3d 487, 492 (Tenn. Ct. App.2003)). The parol evidence rule provides that parol evidence "is inadmissible to contradict, vary, or alter a written contract where the written instrument is valid, complete, and unambiguous, absent fraud or mistake or any claim or allegation thereof." *Bradford v. Sell,* 240 S.W.3d 834, 838 (Tenn. Ct. App. 2007)(citing *Airline Const. Inc. v. Barr,* 807 S.W.2d 247, 259 (Tenn. Ct. App.1990); 32A C.J.S. *Evidence* § 851 at 213 (1974); Tenn. Code Ann. § 47–2–202. However, when a contractual provision is ambiguous, a court is permitted to use parol evidence, including the contracting parties' conduct and statements regarding the disputed provision, to guide the court in construing and enforcing the contract. *Watson* at 612 (citing *Memphis Housing Auth. v. Thompson,* 38 S.W.3d 504, 512 (Tenn.2001); *Fidelity–Phenix Fire Ins. Co. of New York v. Jackson,* 181 Tenn. 453, 181 S.W.2d 625, 631 (1944); *Vargo,* 115 S.W.3d at 494). To aid the court's discernment of the parties' intention, however, the parol evidence rule does not prohibit the court from considering the circumstances surrounding the formation of the contract, the business to which the contract relates, and the construction placed upon the contract by the parties in carrying it out. *Adkins v. Bluegrass Estates, Inc.,* 360 S.W.3d 404, 412 (Tenn. Ct. App. 2011), appeal denied (Dec. 14, 2011)(citing *Healthmart USA, LLC v. Directory Assistants, Inc.,* No. M2010–00880-COA- R3- CV, 2011 WL 1314662 at *2 (Tenn. Ct. App. April 6, 2011)).

Appellants acknowledge that while both parties were alive, that neither party held a "Majority Interest". Both parties acknowledge that under Section 12.1(e) of the Operating Agreement,, Bayne's death was a "Liquidating Event". Both parties also agree that Bayne's

estate acquired Bayne's "Economic Interest" upon his death and that the estate is not a "Member" and as such, does not have a "Capital Interest" in the LLC. Allred contends that although he had only a 50% interest in the LLC before Bayne's death, as the only remaining "Member", he now has a "Majority Interest" in the LLC and that he can vote that "Majority Interest" to avoid dissolution of the LLC. This argument, however, is based solely on the very terms that this Court held to be ambiguous in the prior decision.

The Trial Court followed this Court's directive and looked at the parole evidence presented to determine the "intent of the parties to the ambiguous operating Agreement, and whether a dissolution of the Company is required pursuant to the Operating Agreement." The Trial Court found that there was no direct proof of Allred's intent but that there were "indices of Bayne's intent" that they keep their interest at 50% each and that the LLC would dissolve upon a member's death. The evidence does not preponderate against the Trial Court's findings of fact. Tenn. R. App. P. 13(d).

The Trial Court concluded based on the evidence presented that Bayne and Allred did not want either party to hold a majority interest and that they intended that HHC-MT dissolve upon the death of a Member. The Trial Court made four specific findings of fact that support this interpretation of the ambiguous dissolution provision. First, the Trial Court found that Bayne and Allred each had Capital Accounts of equal value, and those Accounts "always remained at 50/50, whether there was a loss or a gain, whether the business was in the red or the black" from 2001 through 2007 when Bayne died.

Second, from 2001 to 2007 Bayne and HHC-ET loaned close to one million dollars to HHC-MT. There was testimony that based on these loans, it was Bayne who took all of the operational risk associated with HHC-MT. The Trial Court stated that based on the evidence of the loans that it "makes no logical sense that Mr. Bayne, through [HHC-ET], would continue to loan money into [HHC-MT] if he could just die and not . . . be recognized . . . an equal part of [HHC-MT]." The Trial Court concluded that "Bayne would be unlikely to continue to loan money to HHC-Middle if his death would cause him to cease holding 50 percent of the company." The evidence supports this finding by the Trial Court. Appellants argue that Bayne's loans to HHC-MT are evidence that Bayne intended to become a creditor of HHC-MT but there is no evidence in the record to support this assertion. The evidence is that Bayne took on more risk than Allred because he made the loans but he continued to keep his Capital Account equal to Allred's Account. We agree with the Trial Court that the fact that Bayne took on more risk than Allred by making loans instead of additional capital contributions demonstrate the parties intended to remain equal partners in the LLC.

Third, Bayne's longtime business associate, Annette Green, testified that Bayne did not want his share of HHC-MT to be acquired by Allred upon Bayne's death and he became

concerned that Allred would try to take over the company. Ms. Green stated that Bayne asked her to get a copy of the Operating Agreement and to give it to his son-in-law who is an attorney. Appellants contend that this testimony bolsters their argument that the Operating Agreement gives Allred, the surviving member, the right to continue the LLC by paying Bayne's estate the value of his Capital Account. This argument is contrary to Ms. Green's testimony. She stated that Bayne's concern was based on his knowledge of Allred's past business dealings and that it was not based on the provisions of the Operating Agreement. There was no evidence presented that contradicted Ms. Green's testimony, and the evidence supports the Trial Court's conclusion on this point.

Next, the Trial Court found to support its finding that Bayne and Allred intended to be equal owners of the HHC-MT was that they had briefly been partners in HHC-WT. The HHC-WT Operating Agreement provided a method for surviving members to continue the LLC following a member's death by paying fair market value for the deceased member's interest. However, the conclusion the Trial Court drew from that interpretation was inappropriate because the Agreements were drafted by different lawyers and the language of the two agreements differ. However, the evidence does not preponderate against the Trial Court's finding that Bayne and Allred intended that they would have an equal interest in HHC-ET and that the LLC would dissolve upon one of their deaths, and that based upon this showing of intent, Allred does not hold a majority interest. We affirm the Trial Court's Judgment.

The Trial Court also held that the Tennessee Limited Liability Company Act, Tenn. Code Ann. § 48-201-101 *et seq.* allows parties the freedom to contract with respect to events of dissolution. On appeal, Allred and HHC-MT dispute this holding. This Court holds that the Trial Court was correct and should be affirmed based upon Tenn. Code Ann. § 48-245-101(6) which provides that "an LLC formed on or after July 1, 1999 . . . be dissolved upon the occurrence of: . . . any event specified in the articles or operating agreement including, but not limited to, events of withdrawal by a member or action or procedure as set forth in the articles or operating agreement . . . ." Based on this language, we conclude the Legislature did not intend the dissolution avoidance statute of the Act to apply, where the parties had expressed their intentions regarding dissolution in a written operating agreement.

Appellants also argue on appeal the Trial Court abused its discretion when it excluded certain testimony from Dudley Taylor, Allred's attorney who drafted the HHC-MT Operating Agreement. We review evidentiary rulings of the trial court on an abuse of discretion standard. *Danny L. Davis Contractors, Inc. v. Hobbs*, 157 S.W.3d 414, 418-19 (Tenn. Ct. App. 2004)(citing *Otis v. Cambridge Mut. Fire Ins. Co.,* 850 S.W.2d 439, 442 (Tenn.1992)). The abuse of discretion standard requires us to consider:

(1) [W]hether the decision has a sufficient evidentiary foundation; (2) whether the trial court correctly identified and properly applied the appropriate legal principles; and (3) whether the decision is within the range of acceptable alternatives.

*Id*. at 419 (citations omitted).

The Trial Court excluded any testimony by Mr. Taylor regarding what he intended the words of the Operating Agreement to mean based upon a finding that such testimony was not relevant to the question of what the parties meant the Operating Agreement to provide. Relevant evidence is defined in Tennessee Rule of Evidence 401:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Appellants argue on appeal that Taylor should have been allowed to testify regarding an alleged typographical error in the Operating Agreement and as to his intent in drafting the Operating Agreement. The alleged typographical error can be found in Section 12.1(e) of the Operating Agreement, which this Court found to be ambiguous. According to Mr. Taylor, the mistake in the document is that in the second paragraph, second sentence of Section 12. 1(e) the words "Majority Interest" appears twice as follows: "The Members hereby agree that, notwithstanding any provision of the Act, the Company shall not dissolve prior to the occurrence of a Liquidating Event. Furthermore, if an event specified in Section 12.1(e) hereof occurs, the remaining Members may, within ninety (90) days of the date such event occurs, **by Majority Interest vote by Majority Interest** elect a successor Member . . ." (emphasis added).

The removal of the second "Majority Interest" from this Section does not cure the ambiguity found by this Court in the first appeal. There the Court held that the ambiguity it found in the Agreement was based on the interdependent defined terms used to explain what was meant by "Majority Interest" and not because of the use of "Majority Interest" twice in the same sentence. The prior opinion in this case indicates that this Court recognized and acknowledged that there was an error in Section 12.1(e) as the opinion cites the language of section as: " by Majority Interest vote by Majority Interest [sic] elect a successor Member . . ." The [sic] indicates recognition of a mistake in the original document.[2] Thus, the redundancy in Section 12.1(e) was not relevant to this Court's earlier finding that the Operating Agreement was ambiguous and was not relevant at trial.

---

[2] In legal writings "significant mistakes in the original should be followed by "[sic]" and otherwise left as they appear in the original. *The Bluebook, a Uniform System of Citation*, 18th Edition.

-10-

Moreover, Mr. Taylor's testimony regarding his general intent as to the meaning of the Operating Agreement also lacks relevancy. Our remand of the case was for determination of the intent of the parties to the agreement, not the intent of the drafter. Mr. Taylor's proffered testimony regarding his intent as to the meaning of the Operating Agreement did not indicate that he was drafting the document at the direction of the parties and, in fact, he stated that he used a form that he had used for other clients and never discussed Section 12. 1 with either Bayne or Allred. Mr. Taylor's testimony as to his intent would not have assisted the Trial Court as to the intent of the parties and was not relevant. The Trial Court did not abuse its discretion when it excluded Mr. Taylor's testimony.

The Judgment of the Trial Court is affirmed and the cause remanded, with the cost of the appeal assessed to B. Fred Allred, III.

_____
HERSCHEL PICKENS FRANKS, P.J.